# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2021AP6 |

| | |
|---|---|
| COMPLETE TITLE: | In the matter of the mental commitment of M.W.: |
| | Sheboygan County, |
| | Petitioner-Respondent, |
| | v. |
| | M.W., |
| | Respondent-Appellant-Petitioner. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 398 Wis. 2d 632, 962 N.W.2d 275
(2021 – unpublished)

| | |
|---|---|
| OPINION FILED: | June 10, 2022 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | December 8, 2021 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Sheboygan |
| JUDGE: | Kent R. Hoffmann |

JUSTICES:
ANN WALSH BRADLEY, J., delivered the majority opinion of the court, in which DALLET, HAGEDORN, and KAROFSKY, JJ., joined. HAGEDORN, J., filed a concurring opinion. ZIEGLER, C.J., filed a dissenting opinion, in which ROGGENSACK and REBECCA GRASSL BRADLEY, JJ., joined.
NOT PARTICIPATING:

ATTORNEYS:

For the respondent-appellant-petitioner there were briefs filed by *Christopher B. Logel* and *Pinix Law, LLC,* Milwaukee. There was an oral argument by *Christopher B. Logel.*

For the petitioner-respondent there was a brief filed by *Kyle C. Lepak*, assistant corporation counsel. There was an oral argument by *Kyle C. Lepak*, assistant corporation counsel.

An amicus curiae brief was filed by *Colleen D. Ball,* assistant state public defender and *Kelli S. Thompson*, state public defender for the Office of the Wisconsin State Public Defender.

**2022 WI 40**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No.  2021AP6
(L.C. No.  2006ME163)

STATE OF WISCONSIN                    :        IN SUPREME COURT

**In the matter of the mental commitment of M.W.:**


**Sheboygan County,**

       **Petitioner-Respondent,**

   **v.**

**M.W.,**

       **Respondent-Appellant-Petitioner.**

**FILED**

**JUN 10, 2022**

Sheila T. Reiff
Clerk of Supreme Court


ANN WALSH BRADLEY, J., delivered the majority opinion of the Court, in which DALLET, HAGEDORN, and KAROFSKY, JJ., joined. HAGEDORN, J., filed a concurring opinion. ZIEGLER, C.J., filed a dissenting opinion, in which ROGGENSACK and REBECCA GRASSL BRADLEY, JJ., joined.


      REVIEW of a decision of the Court of Appeals. *Reversed.*


      ¶1   ANN WALSH BRADLEY, J.   The petitioner, M.W., seeks review of an unpublished, authored decision of the court of appeals reversing the circuit court's order extending her involuntary commitment and remanding to the circuit court for

further proceedings.[1] She argues that the court of appeals erred by remanding to the circuit court, and that outright reversal is the proper remedy.

¶2 We are circumscribed in our review by the narrow issue presented. In Langlade County v. D.J.W., 2020 WI 41, ¶3, 391 Wis. 2d 231, 942 N.W.2d 277, this court announced a new directive that "going forward circuit courts in recommitment proceedings are to make specific factual findings with reference to the subdivision paragraph of Wis. Stat. § 51.20(1)(a)2. on which the recommitment is based." The court of appeals here determined that the circuit court failed to make such findings and Sheboygan County (the County) has not requested review of that determination. What remains for our review is an issue of remedy. In D.J.W., we did not specify the remedy to be implemented when the circuit court runs afoul of the D.J.W. directive.

¶3 M.W. contends that outright reversal is the proper remedy for a D.J.W. violation. In contrast, the County asserts that it is more appropriate to remand the case to the circuit court for it to make the missing findings.

---

[1] Sheboygan County v. M.W., No. 2021AP6, unpublished slip op. (Wis. Ct. App. May 12, 2021) (reversing and remanding the order of the circuit court for Sheboygan County, Kent R. Hoffman, Judge). The appeal was decided by one judge, Judge Mark Gundrum, pursuant to Wis. Stat. § 752.31(2)(d) (2019-20).

All subsequent references to the Wisconsin Statutes are to the 2019-20 version unless otherwise indicated.

¶4   We conclude that the recommitment order at issue here has expired and as a consequence the circuit court lacks competency to conduct any proceedings on remand.  Therefore, reversal is the appropriate remedy in this case.

¶5   Accordingly, we reverse the decision of the court of appeals.[2]

I

¶6   M.W. has been under ch. 51 mental health commitment orders since 2006.  In August of 2020, the County again filed a petition to extend her commitment.[3]  Additionally, it sought an order for involuntary medication and treatment.

¶7   The circuit court held a hearing on the County's petition, at which three witnesses testified.  Those witnesses called by the County were Dr. Marshall Bales, who examined M.W., and Emilee Sesing, a case worker assigned to M.W.  Additionally, M.W. testified on her own behalf.

¶8   Ultimately, the circuit court granted the County's petition to extend M.W.'s commitment and entered an order for

---

[2] The County did not file a petition for cross-review of the court of appeals' conclusion that the circuit court violated Langlade County v. D.J.W., 2020 WI 41, 391 Wis. 2d 231, 942 N.W.2d 277, and we thus leave that conclusion of the court of appeals undisturbed.  See Betchkal v. Willis, 127 Wis. 2d 177, 183 n.4, 378 N.W.2d 684 (1985) (explaining that where an issue "was not raised in the . . . petition for review and no cross-petition was filed . . . the issue is not before us").  We reverse the court of appeals on the issue of remedy only.

[3] Throughout this opinion, we use the terms "extension of a commitment" and "recommitment" interchangeably, as does Wis. Stat. § 51.20.  See Portage County v. J.W.K., 2019 WI 54, ¶1 n.1, 386 Wis. 2d 672, 927 N.W.2d 509.

involuntary medication and treatment. It determined that M.W. suffers from a mental illness, is a proper subject for treatment, and that M.W. would be a proper subject for commitment if treatment were withdrawn.

¶9 The circuit court further concluded that M.W. is dangerous to herself or others. It supported this determination by referring to M.W.'s statement to Dr. Bales that she would not pursue treatment absent recommitment and to a recent incident where M.W. left a group home and traveled to New Mexico without her belongings or medications.

¶10 M.W. appealed the circuit court's recommitment order. She argued, among other things, that the circuit court failed to adhere to D.J.W.'s directive that it make specific factual findings with reference to the subdivision paragraph of Wis. Stat. § 51.20(1)(a)2. on which the recommitment is based.[4]

¶11 The court of appeals agreed with M.W. on this point and reversed the recommitment order. Sheboygan County v. M.W., No. 2021AP6, unpublished slip op. (Wis. Ct. App. May 12, 2021). It observed that "the record shows, and the County acknowledges that the circuit court failed to state the subdivision paragraph of Wis. Stat. § 51.20(1)(a)2. on which it based M.W.'s recommitment." Id., ¶10. Additionally, "in its ruling, the [circuit] court failed to clearly track the necessary elements

_____

[4] M.W. additionally contended that the County did not present sufficient evidence that she is dangerous and that the County failed to provide notice of the standard of dangerousness under Wis. Stat. § 51.20(1)(a)2. on which it was proceeding. M.W., No. 2021AP6, at ¶5.

4

of any particular subdivision paragraph and state how the evidence satisfied those elements." Id.

¶12 Finding "clarity and specificity . . . lacking in the [circuit] court's ruling in this case," the court of appeals refused to "engage in guesswork to determine whether the County provided sufficient evidence to satisfy the dangerousness requirement of [Wis. Stat. § 51.20(1)(a)2.]" Id. It further reasoned: "D.J.W. made it clear that it is not the job of an appellate court to try to piece together court comments like pieces of a jigsaw puzzle in an effort to figure out what the picture is." Id., ¶11.

¶13 After determining that a D.J.W. violation occurred, the court of appeals moved to briefly address the remedy for that violation. Citing a prior unpublished court of appeals opinion dealing with a similar issue, the court of appeals reversed and remanded to the circuit court with directions to follow the directive of D.J.W. Id., ¶14 (citing Rock Cnty. Dep't of Human Servs. v. J.E.B., No. 2020AP1954-FT, unpublished slip op., ¶27 (Wis. Ct. App. Apr. 7, 2021)). Further following the lead of the J.E.B. court, the court of appeals added:

> If, on remand, and after further review of the evidence, D.J.W., and the five dangerousness standards in Wis. Stat. § 51.20(1)(a)2.a.-e., the circuit court again determines that the County has met its burden of showing current dangerousness under § 51.20(1)(a)2., then the court must "make specific factual findings with reference to the subdivision paragraph of Wis. Stat. § 51.20(1)(a)2. on which the recommitment is based" as required by D.J.W.

5

M.W., No. 2021AP6, at ¶14 (quoting J.E.B., No. 2020AP1954-FT, at ¶27).

¶14 M.W. petitioned for this court's review of the remedy issue only. The County did not file a petition for cross-review of the court of appeals' conclusion that the circuit court violated D.J.W. and accordingly that issue was not presented to this court.

II

¶15 We are called upon to resolve a question of appellate remedy. The selection of the proper remedy on appeal is a question of law that we review independently. See State v. Lentowski, 212 Wis. 2d 849, 853, 569 N.W.2d 758 (Ct. App. 1997).

III

¶16 We begin with the necessary background regarding recommitment proceedings and the directive established by this court in D.J.W. Subsequently, we address the question raised in the petition for review, i.e. the proper appellate remedy for a D.J.W. violation.

A

¶17 In order to involuntarily commit a person pursuant to ch. 51, the petitioner must demonstrate that three elements are fulfilled: the subject must be (1) mentally ill; (2) a proper subject for treatment; and (3) dangerous to themselves or others. Fond du Lac County v. Helen E.F., 2012 WI 50, ¶20, 340 Wis. 2d 500, 814 N.W.2d 179; Wis. Stat. § 51.20(1)(a)1.-2. In an initial commitment proceeding, the "dangerousness" element can be proven through any of five standards set forth by

statute. <u>State v. Dennis H.</u>, 2002 WI 104, ¶14, 255 Wis. 2d 359, 647 N.W.2d 851; Wis. Stat. § 51.20(1)(a)2.[5]

---

[5] Pursuant to Wis. Stat. § 51.20(1)(a)2., an individual is "dangerous" if any of the following is fulfilled:

(1) Evidences a substantial probability of physical harm to himself or herself as manifested by evidence of recent threats of or attempts at suicide or serious bodily harm. § 51.20(1)(a)2.a.

(2) Evidences a substantial probability of physical harm to other individuals as manifested by evidence of recent homicidal or other violent behavior, or by evidence that others are placed in reasonable fear of violent behavior and serious physical harm to them, as evidenced by a recent overt act, attempt or threat to do serious physical harm. § 51.20(1)(a)2.b.

(3) Evidences such impaired judgment, manifested by evidence of a pattern of recent acts or omissions, that there is a substantial probability of physical impairment or injury to himself or herself or other individuals. § 51.20(1)(a)2.c.

(4) Evidences behavior manifested by recent acts or omissions that, due to mental illness, he or she is unable to satisfy basic needs for nourishment, medical care, shelter or safety without prompt and adequate treatment so that a substantial probability exists that death, serious physical injury, serious physical debilitation, or serious physical disease will imminently ensue unless the individual receives prompt and adequate treatment for this mental illness. § 51.20(1)(a)2.d.

(5) For an individual, other than an individual who is alleged to be drug dependent or developmentally disabled, after the advantages and disadvantages of and alternatives to accepting a particular medication or treatment have been explained to him or her and because of mental illness, evidences either incapability of expressing an understanding of the advantages and disadvantages of accepting medication or treatment and the alternatives, or substantial incapability of applying an understanding of the

¶18 Upon the impending expiration of an initial commitment, a petitioner may seek to extend the commitment for a period not to exceed one year. Wis. Stat. § 51.20(13)(g)1., (13)(g)3.; D.J.W., 391 Wis. 2d 231, ¶31. To prevail in a recommitment proceeding, the petitioner must demonstrate the same three elements necessary for the initial commitment. Waukesha County v. J.W.J., 2017 WI 57, ¶20, 375 Wis. 2d 542, 895 N.W.2d 783.

¶19 However, in a recommitment Wis. Stat. § 51.20(1)(am) provides an additional manner of proving dangerousness not available in the initial commitment. "Because an individual's behavior might change while receiving treatment, Wis. Stat. § 51.20(1)(am) provides a different avenue for proving dangerousness if the individual has been the subject of treatment for mental illness immediately prior to commencement

_____

advantages, disadvantages, and alternatives to his or her mental illness in order to make an informed choice as to whether to accept or refuse medication or treatment; and evidences a substantial probability, as demonstrated by both the individual's treatment history and his or her recent acts or omissions, that the individual needs care or treatment to prevent further disability or deterioration and a substantial probability that he or she will, if left untreated, lack services necessary for his or her health or safety and suffer severe mental, emotional, or physical harm that will result in the loss of the individual's ability to function independently in the community or the loss of cognitive or volitional control over his or her thoughts or actions. § 51.20(1)(a)2.e.

D.J.W., 391 Wis. 2d 231, ¶30.

8

of extension proceedings . . . ." Portage County v. J.W.K., 2019 WI 54, ¶19, 386 Wis. 2d 672, 927 N.W.2d 509.

¶20 Pursuant to Wis. Stat. § 51.20(1)(am):

> If the individual has been the subject of inpatient treatment for mental illness . . . immediately prior to commencement of the proceedings as a result of . . . a commitment or protective placement ordered by a court under this section . . . or if the individual has been the subject of outpatient treatment for mental illness . . . immediately prior to commencement of the proceedings as a result of a commitment ordered by a court under this section, . . . the requirements of a recent overt act, attempt or threat to act under par. (a)2.a. or b., pattern of recent acts or omissions under par. (a)2.c. or e., or recent behavior under par. (a)2.d. may be satisfied by a showing that there is a substantial likelihood, based on the subject individual's treatment record, that the individual would be a proper subject for commitment if treatment were withdrawn.

This pathway to a recommitment "recognizes that an individual receiving treatment may not have exhibited any recent overt acts or omissions demonstrating dangerousness because the treatment ameliorated such behavior, but if treatment were withdrawn, there may be a substantial likelihood such behavior would recur." J.W.K., 386 Wis. 2d 672, ¶19.

¶21 D.J.W. arrived at this court for our review of a recommitment order. D.J.W., 391 Wis. 2d 231, ¶23. In that case, D.J.W. argued that the evidence was insufficient to support a conclusion that he was "dangerous" within the meaning of Wis. Stat. § 51.20.

¶22 The court approached the legal issues by first observing that "[t]he statutory basis for D.J.W.'s commitment in

9

this case has been somewhat of a moving target." Id., ¶36. Indeed, "It was not clear at either the initial commitment hearing or the extension hearing on which subdivision paragraph of Wis. Stat. § 51.20(1)(a)2. the commitment was based." Id.

¶23 With the parties and the record in the case providing no guideposts for the court's review, the D.J.W. court announced a new directive for circuit courts. Id., ¶40. Namely, the court stated "that going forward circuit courts in recommitment proceedings are to make specific factual findings with reference to the subdivision paragraph of § 51.20(1)(a)2. on which the recommitment is based." Id.

¶24 Such a directive is "manifest in the language of Wis. Stat. § 51.20(1)(am)," and serves two distinct purposes. Id., ¶¶41-42. "First, it provides clarity and extra protection to patients regarding the underlying basis for a recommitment." Id., ¶42. Concerns about a fair process are paramount when any deprivation of liberty, such as a civil commitment, is at issue. Id. (citing Addington v. Texas, 441 U.S. 418, 425 (1979)). "With such an important liberty interest at stake, the accompanying protections should mirror the serious nature of the proceeding." Id., ¶43. Accordingly, the directive of specific factual findings connected to a standard of dangerousness "provides increased protection to patients to ensure that recommitments are based on sufficient evidence." Id.; see also Waukesha County v. E.J.W., 2021 WI 85, ¶31, 399 Wis. 2d 471, 966 N.W.2d 590 (detailing ch. 51's "many provisions designed to

10

offer procedural and substantive protections to the person subject to commitment").

¶25 Second, the D.J.W. directive was intended to "clarify issues raised on appeal of recommitment orders and ensure the soundness of judicial decision making, specifically with regard to challenges based on the sufficiency of the evidence." D.J.W., 391 Wis. 2d 231, ¶44. The court explained that "[a] more substantial record will better equip appellate courts to do their job, further ensuring meaningful appellate review of the evidence presented in recommitment proceedings." Id.

B

¶26 We turn now to the legal issue raised by the petition for review, i.e. the proper remedy for a D.J.W. violation.[6] In the time since this court issued the D.J.W. opinion, the court of appeals has been presented with a number of appeals raising the issue of whether the circuit court violated D.J.W.'s directive. When the court of appeals has determined that such a violation occurred, the remedy ordered has not been consistent. In some cases, the court of appeals has remanded to the circuit court, while in others it has reversed outright with no remand.

¶27 The court of appeals in this case reversed and remanded for the circuit court to, in essence, fill in the

---

[6] As the concurrence aptly explains, the dissent goes well outside the bounds of the narrow remedy issue raised in this case. Concurrence, ¶43. The merits of the commitment are not before us because the County did not ask us to review them. See supra, ¶5 n.2. We thus do not further address the dissent's assertion of harmless error.

11

missing findings. M.W., No. 2021AP6, at ¶14. In doing so, the court of appeals referenced J.E.B., No. 2020AP1954-FT, at ¶27. In J.E.B., despite an uncontested argument for outright reversal, the court of appeals ordered a remand to the circuit court. Its reasoning included precious little in the way of analysis of the remedy other than to say that "the more appropriate course of action is to remand this matter to the circuit court with directions to follow the dictates of D.J.W. discussed above." Id.

¶28 In contrast, other opinions by the court of appeals have indicated that outright reversal with no remand is the appropriate remedy. See, e.g., Outagamie County v. L.C.E., No. 2021AP324, unpublished slip op., ¶10 (Wis. Ct. App. Sept. 8, 2021); Shawano County v. S.L.V., No. 2021AP223, unpublished slip op., ¶20 (Wis. Ct. App. Aug. 17, 2021); Eau Claire County v. J.M.P., No. 2020AP2014-FT, unpublished slip op., ¶21 (Wis. Ct. App. June 22, 2021). In these cases, the court of appeals' rationale has focused on the circuit court's competency to conduct proceedings on remand and the lack of meaningful relief that would be afforded to a committed person in the event of a remand.

¶29 For example, the court in J.M.P. observed that "[a]lthough the circuit court held a hearing on the County's petition to extend [J.M.P.'s] commitment before [the expiration of the previous commitment], the court failed to enter a valid order extending [J.M.P.'s] commitment before his prior commitment order expired." J.M.P., No. 2020AP2014-FT, at ¶21.

12

Accordingly, "when the prior commitment order expired, the court lost competency to conduct further proceedings on the County's petition to extend [J.M.P.'s] commitment." Id. The court further referenced the purposes of the D.J.W. directive, determining that remanding to the circuit court for factual findings would cause the "clarity" and "extra protection" D.J.W. sought to engender to come "far too late to be meaningful." Id., ¶22.

¶30 Similarly, in S.L.V., the court of appeals wrote that a remand would serve no purpose because the circuit court lacked competency:

> Here, the circuit court held a final hearing on the County's petition to involuntarily commit [S.L.V.] within the statutory time limits, but it failed to comply with its obligations under D.J.W. during that hearing, and it therefore failed to enter a valid commitment order. At this point, the statutory time limits for holding a final commitment hearing have long since passed, and, as a result, the court now lacks competency to conduct further proceedings on the County's petition. A remand for the court to comply with its obligations under D.J.W. would therefore serve no purpose, as the court now lacks competency to do so.

S.L.V., No. 2021AP223, at ¶20.

¶31 The court of appeals in L.C.E. additionally highlighted in its analysis a remand's effect on the right to a meaningful appeal: "Because the recommitment order was entered almost a year ago, [L.C.E.] has not been afforded the clarity and additional protections guaranteed by D.J.W. for that entire period, and remedying the violation now would be far too late to be meaningful." L.C.E., No. 2021AP324, at ¶10 (quotation

13

omitted). It further explained: "The remedy of reversal also ensures that [L.C.E.] is not deprived of her right to a meaningful appeal, as it would be almost impossible for [L.C.E.] to appeal from the results of a new hearing, if necessary, before her current recommitment order likely becomes moot." Id.

¶32 The County urges us to follow the former set of cases, including the court of appeals' decisions in this case and J.E.B. In the County's view, a D.J.W. violation is a "minor procedural violation" akin to a failure to adhere to "magic words" or to provide a simple statutory citation. Such a procedural failing is not, according to the County, a reason to disregard the evidence that was presented at the hearing and risk releasing to the community a person who should properly be committed.

¶33 On the other hand, M.W. argues that the latter court of appeals cases arrived at the correct result, contending that outright reversal is the only way to ensure a meaningful appeal of a recommitment order where a D.J.W. violation is alleged. M.W. asserts that the result of remanding would consistently be that the circuit court merely rearticulates its previous conclusion in different terms, thereby delaying resolution of the appeal and rendering the protections offered by D.J.W. completely illusory. Further, M.W. argues that the purposes of the D.J.W. directive, as set out in that opinion, are best served by an outright reversal rather than a remand. Alternatively, M.W. asserts in passing that remand is inappropriate because the circuit court lacks competency to

14

proceed on remand. This argument is much more fully fleshed out by the State Public Defender as amicus. Having been raised, we cannot ignore such a fundamental concern as competency.

¶34 We agree with M.W. that outright reversal is the appropriate remedy. Our reasoning in reaching this conclusion focuses on the circuit court's lack of competency to conduct proceedings on remand.

¶35 A court's competency refers to the court's power to exercise its subject matter jurisdiction in a particular case. City of Eau Claire v. Booth, 2016 WI 65, ¶7, 370 Wis. 2d 595, 882 N.W.2d 738. Unlike a court's subject matter jurisdiction, which is established by the Wisconsin Constitution,[7] competency may be affected by noncompliance with statutory requirements pertaining to the invocation of that jurisdiction in individual cases. Id.

¶36 In the specific area of ch. 51 commitments, our precedent establishes the premise that "[t]he circuit court must hold a hearing on the petition for extension before the previous order expires or it loses competency to extend the commitment." J.W.K., 386 Wis. 2d 672, ¶20. An example of this principle in practice is provided by Rock County v. G.O.T., 151 Wis. 2d 629, 631, 445 N.W.2d 697 (Ct. App. 1989). There, the circuit court erroneously concluded that G.O.T. was not entitled to a jury trial. The court of appeals accordingly reversed and determined that "G.O.T. was entitled to a jury trial, but that the court

---

[7] See Wis. Const. art. VII, § 8.

lost competency by failing to hear and decide the petition before the commitment had expired." Id.; see also id. at 633 (explaining that "the trial court must hold the extension hearing before the initial commitment expires to determine whether the defendant is, in the words of sec. 51.20(13)(g)3., 'a proper subject for commitment'"). Consequently, the court simply vacated the recommitment order and remanded with directions to dismiss the petition. Id. at 631.

¶37 This court recently applied the same principle when addressing the remedy for a violation of a ch. 51 patient's right to a jury trial. See E.J.W., 399 Wis. 2d 471, ¶40 n.10. In E.J.W., we explained:

> We simply reverse the decision of the court of appeals rather than remanding for a jury trial because the specific recommitment at issue in this case has expired and accordingly the circuit court has lost competency to act. See G.O.T., 151 Wis. 2d at 631 (determining that person subject to commitment extension was entitled to jury trial but that the circuit court lost competency by failing to hear and decide the petition before the commitment had expired and that as a result the petition should be dismissed); J.W.K., 386 Wis. 2d 672, ¶20 (explaining that "[t]he circuit court must hold a hearing on the petition for extension before the previous order expires or it loses competency to extend the commitment"). This determination does not affect the validity of any subsequent extensions of commitment. J.W.K., 386 Wis. 2d 672, ¶21 (setting forth that the reversal of a commitment order "does not retroactively deprive the circuit court that issued a subsequent commitment order of competency").

E.J.W., 399 Wis. 2d 471, ¶40 n.10.

¶38 Likewise here, the recommitment order from which M.W. appealed has expired, as will often be the case. See J.W.K.,

16

386 Wis. 2d 672, ¶29 (acknowledging that "a recommitment order will likely expire before appellate proceedings conclude"). Indeed, the recommitment order from which M.W. appealed expired in October of 2021. We therefore conclude that the recommitment order at issue here has expired and as a consequence the circuit court lacks competency to conduct any proceedings on remand. This conclusion flows directly from the decisions in G.O.T., J.W.K., and E.J.W., which contain language on point to the situation at hand. Therefore, reversal is the appropriate remedy in this case.

¶39 Accordingly, we reverse the decision of the court of appeals.

*By the Court.*—The decision of the court of appeals is reversed.

¶40 BRIAN HAGEDORN, J. *(concurring).* The court today answers a narrow question: Is remand appropriate when (1) the court of appeals concludes the circuit court committed reversible error by failing to comply with the requirements we articulated in D.J.W., and (2) the commitment order that is the subject of the appeal has already expired? I join the majority because it correctly answers this question, holding that remand is not warranted because the circuit court lacks competency to rule on an expired commitment order. I write separately to address the dissent's contention that we should decide more than the narrow question presented.

¶41 To begin, it is helpful to reiterate what D.J.W. requires. In Langlade County v. D.J.W., we directed that "circuit courts in recommitment proceedings are to make specific factual findings with reference to the subdivision paragraph of Wis. Stat. § 51.20(1)(a)2. on which the recommitment is based." 2020 WI 41, ¶3, 391 Wis. 2d 231, 942 N.W.2d 277. We explained that this requirement would "clarify issues raised on appeal" and "better equip appellate courts to do their job." Id., ¶44. Thus, a circuit court can fall short of our D.J.W. directive by failing to make specific factual findings or by failing to state which dangerousness standard the recommitment is based on.

¶42 Although the parties frame this case as addressing the appropriate "remedy for a D.J.W. error," we do not purport to answer that question in the broad strokes this framing suggests.[1]

---

[1] In briefing, M.W. described the issue before the court as follows: "Whether the remedy for a D.J.W. error is outright reversal of the underlying orders, rather than a reverse and

1

This is in part because not all failures to follow our D.J.W. directive are created equal. A circuit court might, for example, neglect to explicitly reference the standard of dangerousness on which the recommitment is based, even as the transcript makes abundantly clear which standard was relied on. Other times, the transcript might fail to shed any light on which standard the circuit court employed. Alternatively, D.J.W.'s instructions could be violated by failing to make specific factual findings on a small or large scale. All of these "D.J.W. errors" technically violate our directive. Yet today's decision does not answer whether these warrant reversal, nor does it prescribe a universal remedy for even a reversible D.J.W. defect.

¶43 What we have before us is a remedy question regarding an already reversed commitment order. The County did not appeal the determination that reversal was necessary. Thus, the dissent inappropriately reviews the decision to reverse; this is not before us. And the dissent's further worry that the court is disregarding other judicial tools that may be applicable, such as harmless error, is grounded in a misunderstanding of the procedural posture of this case. The dissent's broader arguments, which have some force, should await a properly postured case. For now, the majority determines——rightly in my

---

remand?" The County agreed with this characterization, framing the issue this way: "What is the proper remedy when, in a Chapter 51 recommitment proceeding, the circuit court fails to make specific factual findings with reference to the statutory basis for its determination of dangerousness as required by Langlade County v. D.J.W.?" (Citation omitted.)

view——that when a case is reversed for a <u>D.J.W.</u> error, and the commitment order is expired, the circuit court loses competency to rule on the expired order. For these reasons, I respectfully concur.

¶44 ANNETTE KINGSLAND ZIEGLER, C.J. *(dissenting)*. The court of appeals in this case reversed a mental recommitment which was supported in the record by substantial medical evidence and expert testimony, and it did so because the circuit court failed to use "magic words." We do not require courts to use magic words. In the process of overturning this recommitment, the court of appeals avoided any material discussion of the facts. Instead, it relied heavily on the lack of citation or quotation to specific statutory language in the circuit court transcript. Our case law does not require such specificity. It instead recognizes the reality of how these proceedings are factually individualized and our need to review the record. The court of appeals did not, and now our court does not, afford the deference due to the record and the circuit court's determinations. The majority errs in not only this regard but also in failing to engage in a harmless error analysis. As a result, I dissent.

¶45 Stated differently, our court misapplies the law. Just two years ago, we decided Langlade County v. D.J.W., 2020 WI 41, 391 Wis. 2d 231, 942 N.W.2d 277. D.J.W. provided guidance to lower courts to ensure clear and effective judicial decision-making in recommitment hearings. D.J.W. was consistent not only with recommitments, but also with historical practice and court proceedings in criminal and other civil contexts. The court in D.J.W. did not hold that a circuit court's failure to cite a statutory reference is enough to overturn a valid mental health commitment. D.J.W. did not hold that appellate courts

1

can evade their own responsibilities. When reviewing recommitment orders on appeal, more than a swift and uncritical review is required. This is a textbook example of this court now requiring magic words. I would not depart from the court's duty to conduct a thorough review of the record, and I disagree with this court's adoption and adaptation of form over substance in now requiring magic words. At most, this record demonstrates harmless error. Again, the court errs in not conducting a harmless error analysis.

¶46 In line with precedents, statutes, and traditional judicial practice, appellate courts must examine the record as a whole and apply a harmless error analysis even when a D.J.W. error is found. The majority avoids discussion of these issues, but in doing so, it invites confusion and further litigation. Processes for valid Chapter 51 recommitments may be thrown into uncertainty, and committees may have their needed treatments interrupted or cut short due to circuit courts' procedural mistakes. Effective judicial administration will also be a casualty, along with common respect for the law. Ultimately, it is the individuals, families, and victims directly affected by severe mental illness who will bear the burden of the uncertainty created by this decision.

¶47 As the majority indicates, the issue we are asked to decide in this case is what "the proper appellate remedy for a

2

D.J.W. violation" is.[1] Majority op., ¶16. Justice Hagedorn's concurrence asserts that, given procedural limitations, the court cannot fully decide that issue. The concurrence explains that the majority opinion stands only for the proposition that "when a case is reversed for a D.J.W. error, and the commitment order is expired, the circuit court loses competency to rule on the expired order." Concurrence, ¶43. The concurrence does not foreclose review in future cases on "whether [D.J.W. errors] warrant reversal," whether there is a "universal remedy for even a reversible D.J.W. defect," or whether "other judicial tools . . . such as harmless error" may be applicable. Id., ¶¶42-43.

---

[1] In the petition for review to this court, M.W. stated on the first page of her analysis: "Issue Presented: Proper Remedy for a D.J.W. error." In the petition, M.W. asserted "[o]nly one aspect of her appeal is the subject of this petition: the proper remedy for a D.J.W. error." In briefing, M.W. reiterated that "[t]he issue presented concerns the proper remedy for an error arising under the rule that this Court announced in [D.J.W.]." Sheboygan County described the issue presented in a similar manner: "What is the proper remedy when, in a Chapter 51 recommitment proceeding, the circuit court fails to make specific factual findings with reference to the statutory basis for its determination of dangerousness as required by [D.J.W.]?"

¶48 The majority affirms the court of appeals' decision to reverse M.W.'s recommitment order.[2] In addition, the majority reverses the court of appeals' decision to remand M.W.'s case to the circuit court for further proceedings. An appellate court cannot reverse a Chapter 51 recommitment on the basis of a D.J.W. error without first examining the record. The majority undertakes no such analysis here. In addition, the harmless error doctrine applies to D.J.W. errors. Because the court of appeals did not examine the record or apply a harmless error analysis, I would reverse the court of appeals' decision in full. M.W.'s recommitment should stand. The majority fails to adequately defer to the well-supported decision of the circuit court.

## I. MENTAL HEALTH COMMITMENTS, APPELLATE REVIEW, AND HARMLESS ERROR

¶49 It has been the law in Wisconsin for over a century that, when a circuit court enters a final judgment or order in a civil case, it must state its findings of facts and conclusions of law. See Wallis v. First Nat'l Bank, 155 Wis. 533, 535, 145

---

[2] The majority unambiguously agrees with the court of appeals' decision to reverse the recommitment order. The majority repeatedly asserts in its opinion that "reversal is the appropriate remedy in this case." Majority op., ¶¶4, 34, 38. Undoubtedly, the court of appeals' decision to reverse the recommitment order is not reversed by the majority opinion. Therefore, the majority mislabels its mandate as a reversal of the court of appeals' decision in full. In reality, the majority affirms the court of appeals' decision to reverse the recommitment order, and the majority reverses the decision to remand the case for rehearing. I disagree with the majority's reasoning, the lack of deference it provides to circuit court decision making, and the mischaracterized mandate. To be clear, the circuit court order should stand.

N.W. 195 (1914) (explaining that a trial court must issue a decision "embodying its findings of fact and conclusions of law before judgment is entered"). This is embodied in Wis. Stat. § 805.17(2), which states that for all civil actions "tried upon the facts without a jury or with an advisory jury, the court shall find the ultimate facts and state separately its conclusions of law thereon." We have long required lower courts to articulate their reasoning in decisions in order to "protect the rights of the litigants and to facilitate review of the record by an appellate court." Hochgurtel v. San Felippo, 78 Wis. 2d 70, 85, 253 N.W.2d 526 (1977).

¶50 However, for just as long as we have required circuit courts to explain their reasoning, we have also refused to reverse valid judgments outright when such reasoning is not provided. Wallis, 155 Wis. at 536 ("The failure to make either findings of fact or conclusions of law is not reversible error, where the judgment shows that the necessary facts and conclusions must have been found in favor of the prevailing party and the evidence supports the judgment."). We have understood that outright reversal of a decision well supported by the record on the lack of circuit court findings would be draconian and would effect a miscarriage of justice. It would also undermine the respect due to circuit court judgments. Therefore, we have established three possible alternatives when reviewing a circuit court decision with incomplete findings. Appellate courts may "(1) affirm the judgment if clearly supported by the . . . evidence, (2) reverse if not so

supported, or (3) remand for the making of findings and conclusions." Kraemer v. Kraemer, 67 Wis. 2d 319, 320, 227 N.W.2d 61 (1975) (collecting cases); accord State v. Margaret H., 2000 WI 42, ¶37, 234 Wis. 2d 606, 610 N.W.2d 475; Wallis, 155 Wis. at 535-36.

¶51 This is in line with an equally storied principle in civil jurisprudence: harmless error. See Wis. Stat. § 805.18(1) (explaining that civil judgments cannot be reversed absent a finding of an error that "affect[s] the substantial rights of the adverse party"); Harran v. Klaus, 79 Wis. 383, 387, 48 N.W. 479 (1891) ("[T]he court [shall], in every stage of an action, [] disregard any error or defect in the pleadings or proceedings which shall not affect the substantial rights of the adverse party, and no judgment shall be reversed or affected by reason of such error or defect."); Martindale v. Ripp, 2001 WI 113, ¶30, 246 Wis. 2d 67, 629 N.W.2d 698 ("The appellate court must conduct a harmless error analysis to determine whether the error affected the substantial rights of the party." (quotations omitted)); 5 C.J.S. Appeal and Error § 982 (2022) ("[I]t is a fundamental principle of appellate procedure that a party cannot assign as error that which is not prejudicial to him or her."). The harmless error doctrine ensures finality, respect for judicial decisions, and fairness for all litigants. Rose v. Clark, 478 U.S. 570, 577 (1986) ("Reversal for error, regardless of its effect on the judgment, encourages litigants to abuse the judicial process and bestirs the public to ridicule it." (quotations omitted)); 5 C.J.S. Appeal and Error, supra

6

(explaining that the harmless error doctrine ensures "the orderly administration of justice and . . . the avoidance of useless expense to litigants"). In all, appellate courts do not reverse civil judgments in favor of one party simply because the circuit court failed to follow proper procedure.

¶52 These basic principles of appellate review in civil cases are applicable to Chapter 51 recommitments. See Milwaukee County v. Mary F.-R., 2013 WI 92, ¶¶11-13, 351 Wis. 2d 273, 839 N.W.2d 581 (explaining that Chapter 51 commitments are "civil proceedings"); Wis. Stat. § 51.20(10)(c) (stating that Chapter 51 proceedings are governed by the rules of evidence and procedure in civil cases). Under § 51.20(13), absent a jury demand, the circuit court overseeing a Chapter 51 commitment proceeding must make factual findings and determine whether as a matter of law an individual is "mentally ill," "a proper subject for treatment," and dangerous. § 51.20(1)(a). This is in kind with all civil cases tried and decided by a judge. Accordingly, we recognized in Marathon County v. D.K. that it is best practice for circuit courts to state and explain their factual and legal conclusions. 2020 WI 8, 390 Wis. 2d 50, 937 N.W.2d 901. Every member of the court in D.K. agreed that the circuit court in the first instance must provide explicit and cogent analysis to facilitate appellate review. Id., ¶55 (Ziegler, J., joined by Roggensack, C.J., and Hagedorn, J.) ("[T]he circuit court could have made more detailed and thorough factual findings and clarified its legal conclusions."); id., ¶68 n.4 (Rebecca Grassl Bradley, J., concurring, joined by

7

Kelly, J.) ("[C]ircuit courts must expressly make independent factual findings on the record, separate from any legal conclusions."); id., ¶86 (Dallet, J., dissenting, joined by Ann Walsh Bradley, J.) ("[Chapter 51 proceedings] cannot be perfunctory under the law.").

¶53 It was in this legal environment that the court in D.J.W. held that circuit courts must state their recommitment findings on the record. Under Wis. Stat. § 51.20(1)(am), an individual already subject to commitment can be recommitted if there is a finding that "the individual would be a proper subject for commitment if treatment were withdrawn." Prior to D.J.W., there was confusion as to whether this was a standalone basis for recommitment, or if a circuit court was required to cite back to one of the initial bases for committing mentally ill individuals along with § 51.20(1)(am). See § 51.20(1)(a)2. This confusion was in no small part due to the language used in our prior opinions to describe recommitment and subsection (am). See Portage County v. J.W.K., 2019 WI 54, ¶19, 386 Wis. 2d 672, 927 N.W.2d 509 ("[T]he County may, as an alternative to the options outlined in § 51.20(1)(a)2.a-e, prove dangerousness" under the recommitment pathway of § 51.20(1)(am)). D.J.W. clarified that, when an individual is recommitted, the circuit court must state its factual findings with reference to one of the initial commitment pathways, in addition to § 51.20(1)(am). D.J.W., 391 Wis. 2d 231, ¶40 ("[W]e determine that going forward circuit courts in recommitment proceedings are to make specific

8

factual findings with reference to the subdivision paragraph of § 51.20(1)(a)2. on which the recommitment is based.").

¶54 In D.J.W., the circuit court did not cite one of the five pathways for initial commitment when it recommitted the individual at issue. Id., ¶45. Further, in oral arguments before the court, the county cited a different dangerousness pathway for recommitment than what was used to obtain the committee's initial commitment six months prior. Id., ¶¶38-39. Nonetheless, we examined the record to determine if recommitment was appropriate, and it was apparent that the county had failed to present the requisite proof. The strongest evidence in favor of commitment was testimony that without treatment the individual would be "unable to maintain a job, hav[e] to rely on disability for income, and liv[e] with family." Id., ¶51. We noted that this was a far cry from a "'substantial probability' that 'death, serious physical injury, serious physical debilitation, or serious physical disease' would ensue if treatment were withdrawn" under the fourth pathway, Wis. Stat. § 51.20(1)(a)2.d. Id., ¶53. Under the third pathway, § 51.20(1)(a)2.c., we explained that "schizophrenia, by itself, does not demonstrate the requisite 'substantial probability of physical impairment.'" Id., ¶57.

¶55 Thus, D.J.W. stands for the well-accepted proposition that circuit courts, as in all civil proceedings, must explain their factual findings and legal conclusions to facilitate effective appellate review. D.J.W. clarified that, in recommitment proceedings, these circuit court statements must be

9

made in reference to both an initial commitment pathway and Wis. Stat. § 51.20(1)(am). Nowhere in D.J.W. did we state that appellate courts would reverse any and all recommitment orders that, on a cursory review, lack citation to an initial commitment pathway. And nowhere in D.J.W. did the court indicate that traditional appellate review of lower court decisions would be amended or abrogated. In fact, D.J.W. stands for the proposition that any error is not reversible error if the record supports the recommitment or if the error is harmless.

¶56 When there are inadequate lower court findings in civil proceedings, we must "(1) affirm the judgment if clearly supported by the . . . evidence, (2) reverse if not so supported, or (3) remand for the making of findings and conclusions." Kraemer, 67 Wis. 2d at 320; Margaret H., 234 Wis. 2d 606, ¶37. D.J.W. did not change this law when the civil proceeding happens to be under Chapter 51. Here, the majority concludes that the court of appeals cannot remand the case for further findings and conclusions, citing the lack of competence. Majority op., ¶4. That leaves either affirming the judgment on the available evidence or reversing if the evidence is not available or apparent. Id. The majority conspicuously does not discuss this issue; it simply concludes "reversal is the appropriate remedy." Id. Although the majority provides no reasoning on the topic, the apparent result is an outright reversal without any discussion of the record. But no such

10

remedy has ever been recognized in Wisconsin for civil proceedings.

¶57 In addition to this conflict with law and precedent, the majority fails to even mention harmless error in its analysis. In line with standard civil procedure, harmless error applies to Chapter 51 proceedings. Wisconsin Stat. § 51.20(10)(c) unambiguously states that "in every stage of an action, [the court shall] disregard any error or defect in the pleadings or proceedings that does not affect the substantial rights of either party." This language is regularly interpreted as requiring harmless error review. See Martindale, 246 Wis. 2d 67, ¶30; 5 C.J.S. Appeal and Error, supra ¶51, ("The reviewing court must disregard error, in every stage of the action, which does not affect the substantial rights of the party complaining."). Both this court and the court of appeals have recognized that harmless error applies to Chapter 51 proceedings. See S.Y. v. Eau Claire County, 162 Wis. 2d 320, 338-39, 469 N.W.2d 836 (1991) (noting that an admission of evidence on dangerousness was harmless); D.S. v. Racine County, 142 Wis. 2d 129, 135-36, 416 N.W.2d 292 (1987) (reviewing a Chapter 51 commitment, holding that the petition failed to comply with procedural drafting requirements, and explaining that "[t]here must be a further showing that this defect misled or caused prejudice before noncompliance with procedural statutory requirements may result in reversal" (citing Wis. Stat. § 51.20(10)(c) (1987-88)); see, e.g., Rock County v. J.J.K., No. 2020AP2105, unpublished slip op., 2021 WL 1803745,

11

at *8-9 (Wis. Ct. App. May 6, 2021) (reviewing a circuit court transcript that failed to identify or cite the correct dangerousness pathway, concluding that any D.J.W. error was "harmless" because the record and the circuit court's analysis fit well within the fourth pathway, and reasoning that D.J.W. was not intended "to put form over substance in a manner that would require reversal on this record").

¶58 D.J.W. in no way implied that harmless error review was inapplicable to circuit courts' explanations of fact and law. To do so would mark a stark departure from established civil procedure (Wis. Stat. § 805.18; Harran, 79 Wis. at 387, Martindale, 246 Wis. 2d 67, ¶30; 5 C.J.S. Appeal and Error, supra ¶51) from statutes governing mental health commitments (Wis. Stat. § 51.20(10)(c)), and from our Chapter 51 precedents (S.Y., 162 Wis. 2d at 338-39, D.S., 142 Wis. 2d at 135-36). Moreover, it would place transcript clarity above some of our most cherished constitutional rights.

¶59 Criminal proceedings experience the same, if not greater constitutional scrutiny than civil commitments. Addington v. Texas, 441 U.S. 418, 427-31 (1979) (comparing the due process implications of criminal prosecutions and civil commitments; stating that civil commitments are not "punitive,"; they rely on medical expert opinion not the judgments of laypeople; the costs imposed on committees if they are wrongfully released can be substantial; and civil commitments by their nature involve less certainty). Nonetheless, in criminal cases, we have routinely applied harmless error to uphold valid

12

circuit court judgments, even where the defendant's fundamental rights were abridged. As we stated in State v. Nelson, even in the most flagrant cases of error, Wisconsin "accords a 'strong presumption' that an error is subject to a harmless-error review." 2014 WI 70, ¶29, 355 Wis. 2d 722, 849 N.W.2d 317 (quoting Neder v. United States, 527 U.S. 1, 8 (1999)). "Accordingly, most constitutional errors can be harmless, and only a very limited class of cases require automatic reversal." Id. (quotations omitted).

¶60 We have applied harmless error to jury instructions that violated a criminal defendant's due process rights, State v. Harvey, 2002 WI 93, ¶47, 254 Wis. 2d 442, 647 N.W.2d 189; violations of criminal defendant's right to testify to her own behalf, State v. Anthony, 2015 WI 20, ¶101, 361 Wis. 2d 116, 860 N.W.2d 10; Miranda violations, State v. Martin, 2012 WI 96, ¶44, 343 Wis. 2d 278, 816 N.W.2d 270; and breaches of a criminal defendant's right to confrontation, State v. Hale, 2005 WI 7, ¶59, 277 Wis. 2d 593, 691 N.W.2d 637; to name a few.[3] Only a limited number of circuit court errors are subject to automatic

---

[3] Any argument that applying harmless error to D.J.W. would make nonexistent D.J.W.'s holding is completely at odds with harmless error jurisprudence. No reasonable jurist actually contends that the Fourth, Fifth, and Sixth Amendments cease to exist simply because judgments are affirmed despite violations of those amendments. A circuit court or litigant who intentionally and knowingly violates the law, relying on the fact that harmless error applies on appeal, would be engaging in the unethical practice of law. See SCR 20:3.1(a)(1) (an attorney cannot "knowingly advance a claim or defense that is unwarranted under existing law"); SCR 60.04(1)(hm) ("A judge shall uphold and apply the law and shall perform all duties of judicial office fairly and impartially.").

13

reversal. These "structural errors" are constitutional in nature, affect the "entire conduct of the trial from beginning to end," and on appeal, the impact of the error on the trial cannot be readily determined. State v. Pinno, 2014 WI 74, ¶49, 356 Wis. 2d 106, 850 N.W.2d 207. Certainly, the failure of a circuit court to state factual conclusions upon review of an established record and the failure to cite a statutory subsection are not structural errors in line with the "complete denial of the right to counsel." Id., ¶50. Appellate courts are more than capable of reviewing a record, party arguments, and circuit court reasoning to determine if a dangerousness pathway has been met. In addition, the failure of a circuit court to be precise in its reasoning does not infect the entire recommitment proceeding with a constitutional violation.[4]

¶61 Our precedents in the criminal sentencing context also support the conclusion that automatic reversal for D.J.W. violations would be improper. When sentencing criminal

---

[4] The fact that Wisconsin appellate courts have, for over a century, examined the record when the circuit court's findings are inadequate and have applied harmless error analyses is proof positive that review of the record when there is a D.J.W. violation is both practical and administrable. Kraemer v. Kraemer, 67 Wis. 2d 319, 320, 227 N.W.2d 61 (1975); State v. Margaret H., 2000 WI 42, ¶37, 234 Wis. 2d 606, 610 N.W.2d 475; Harran v. Klaus, 79 Wis. 383, 387, 48 N.W. 479 (1891); Martindale v. Ripp, 2001 WI 113, ¶30, 246 Wis. 2d 67, 629 N.W.2d 698. If the record and the circuit court findings do not allow the appellate court to reasonably determine what pathway of dangerousness is supported by the record, the appellate court can reverse the recommitment order. This result would align with D.J.W.'s purpose in ensuring clarity and factual support in recommitment orders while also protecting the finality of valid circuit court judgments.

14

defendants, we have held that circuit courts must, "by reference to the relevant facts and factors, explain how the sentence's component parts promote the [statutorily required] sentencing objectives." State v. Gallion, 2004 WI 42, ¶46, 270 Wis. 2d 535, 678 N.W.2d 197. This standard is very similar to D.J.W.'s requirement that circuit courts link their factual findings to Wis. Stat. § 51.20(1)(a)2.'s dangerousness pathways. However, unlike determinations of dangerousness for Chapter 51 proceedings, sentencing determinations are largely left to the discretion of circuit courts. Compare D.K., 390 Wis. 2d 50, ¶18 ("[O]ur review of statutory dangerousness requires us to apply the facts to the statutory standard and presents a question of law that we review independently."), with Gallion, 270 Wis. 2d 535, ¶18 ("[Appellate courts] follow[] a consistent and strong policy against interference with the discretion of the trial court in passing sentence." (quotations omitted)). It is therefore of special import that sentencing courts explain their reasoning so litigants, the public, and appellate courts can have confidence that the circuit court properly exercised its wide discretion.

¶62 Nonetheless, even in the sentencing context, we have made clear that circuit courts are not required to use "magic words." Gallion, 270 Wis. 2d 535, ¶49. We do not reverse convictions simply because a circuit court failed to explicitly quote or reference sentencing factors, even if that method would facilitate appellate review. McCleary v. State, 49 Wis. 2d 263, 280-81, 182 N.W.2d 512 (1971). Instead, "[i]f the facts are

15

fairly inferable from the record, and the reasons indicate the consideration of legally relevant factors, the sentence should ordinarily be affirmed." State v. Grady, 2007 WI 81, ¶33, 302 Wis. 2d 80, 734 N.W.2d 364.

¶63 If D.J.W. errors result in automatic reversal, without any consideration of the record as a whole or harmless error, we will transform Chapter 51 appeals into contests over magic words. Appellate courts would put aside any consideration of the merits. Instead, the driving focus would become whether the circuit court cited or quoted a subdivision paragraph of Wis. Stat. § 51.20(1)(a)2. This would create horrible incentives for litigants. If a commitment can be overturned on mere citations and labels, the opportunities for gamesmanship would substantially increase. Specifically, committees and their representatives will have no incentive to assist circuit courts in complying with D.J.W. Even in cases where the record overwhelmingly supports commitment and the individual desperately needs treatment, if a circuit court mistakenly fails to cite a subdivision paragraph of § 51.20(1)(a)2., the

committee can remain silent and overturn his or her commitment on appeal.[5]

¶64 D.J.W. reiterated the long-established principle that circuit courts must explain their reasoning and legal conclusions when they decide civil cases. 391 Wis. 2d 231, ¶40; D.K., 390 Wis. 2d 50, ¶¶55, 68 n.4, 86; Wallis, 155 Wis. at 535-36. When circuit courts fail to do so, we must examine the record and determine whether their decision should be affirmed or reversed. Kraemer, 67 Wis. 2d at 320; Margaret H., 234 Wis. 2d 606, ¶37. In all legal proceedings, civil and criminal,

---

[5] Even if we create a new rule mandating automatic reversal of Chapter 51 commitments, for sake of basic judicial integrity, we must apply the forfeiture doctrine to D.J.W. violations. See Waukesha County v. S.L.L., 2019 WI 66, ¶42, 387 Wis. 2d 333, 929 N.W.2d 140 (reasoning that a Chapter 51 committee did not object to the sufficiency of the evidence and had thus forfeited the issue on appeal); Wis. Stat. § 805.11(1), (3) (stating that "[a]ny party who has fair opportunity to object before a ruling or order is made must do so in order to avoid waiving error" and reiterating that "[e]xceptions shall never be made"). Committees and their counsel must have some incentive to encourage D.J.W. compliance. See State v. Ndina, 2009 WI 21, ¶30, 315 Wis. 2d 653, 761 N.W.2d 612 ("The purpose of the 'forfeiture' rule is to enable the circuit court to avoid or correct any error with minimal disruption of the judicial process, eliminating the need for appeal."). Otherwise, D.J.W. will become nothing more than a tripwire to easily overturn commitments, not a means to ensure effective court administration. Notably, there is no record here that M.W. objected to any lack of clarity on which statutory basis the recommitment was supported, nor at the time of the recommitment was she left unaware of possible dangerousness pathways under which she could be recommitted. At the hearing, M.W.'s counsel objected to an alleged lack of pre-hearing notice on the part of the County, but then directly addressed and opposed application of the fifth dangerousness pathway before the circuit court. After the circuit court provided its reasoning in favor of recommitment, the circuit court gave M.W.'s counsel an opportunity to comment or object.

appellate courts apply harmless error. Wis. Stat. § 805.18; Harran, 79 Wis. at 387; Martindale, 246 Wis. 2d 67, ¶30; 5 C.J.S. Appeal and Error, supra ¶51; Nelson, 355 Wis. 2d 722, ¶29; Pinno, 356 Wis. 2d 106, ¶49. And the harmless error doctrine extends to Chapter 51 commitments. See Wis. Stat. § 51.20(10)(c); S.Y., 162 Wis. 2d at 338-39; D.S., 142 Wis. 2d at 135-36.

¶65 D.J.W. correctly reversed a Chapter 51 commitment that was woefully lacking in factual support or a clear connection to a dangerousness pathway under Wis. Stat. § 51.20(1)(a)2. 391 Wis. 2d 231, ¶¶38-39, 51, 53, 57. The case did not remake appellate practice and procedure in this state. It did not create a judge-made structural error standard, nor did it mandate the use of magic words. In line with our historical practice, precedents, and statutes, we cannot reverse wholesale any and all Chapter 51 commitments when there is a D.J.W. error. If the commitment is supported by the evidence and the law, it must be affirmed. In addition, the County must be given the opportunity to argue for harmless error.

¶66 The stakes are high in Chapter 51 commitments. Although we hold the County to rigorous standards and safeguard committees' rights to fair and honest treatment, civil commitment ultimately ensures that mentally ill individuals receive the treatment they need before someone gets hurt. Automatic reversal of commitment orders solely due to the lack of precise wording on the part of a judge ignores substance and makes form paramount. And the potential costs would

18

significantly outweigh any intended benefits. Even the most suicidal or homicidal individuals may have their commitments overturned on the basis of a circuit court's procedural error. This would be a grave disservice to the fair and proper administration of justice. More significantly, it would symbolize a failure of the judiciary to the many victims of severe mental illness, who rely on Chapter 51 for safety and protection. In cruel irony, unjustified reversal will harm civil committees the most. Addington, 441 U.S. at 430 ("Such 'freedom' for a mentally ill person would be purchased at a high price.").

## II.  THE COURT OF APPEALS' DECISION AND THE MAJORITY OPINION

¶67 Here, the court of appeals examined the circuit court transcript and determined that the circuit court did not quote or cite a dangerousness pathway under Wis. Stat. § 51.20(1)(a)2. Shebogyan County v. M.W., No. 2021AP6, unpublished slip op., ¶¶10, 12 (Wis. Ct. App. May 12, 2021). The court of appeals reversed M.W.'s commitment, but remanded the case for the circuit court to clarify its findings. Id., ¶14. This is in line with established practice for reviewing circuit court findings in civil cases. Kraemer, 67 Wis. 2d at 320 (explaining that appellate courts may "remand for the making of findings and conclusions"); accord Margaret H., 234 Wis. 2d 606, ¶37. However, the court of appeals did not consider whether the record supported M.W.'s recommitment notwithstanding any D.J.W. error. The court of appeals also did not review M.W.'s recommitment under the harmless error doctrine, despite the

19

County arguing explicitly in its court of appeals brief that harmless error applied: "Since the Court's ruling can easily be determined upon review, M.W. is not substantially prejudiced by the lack of specific statute number" (citing Wis. Stat. § 51.20(10)(c)).

¶68 If the court of appeals examined the record or applied harmless error, it would not have reversed the recommitment order in this case. There was substantial evidence to support the fifth pathway on dangerousness, and both medical experts and the County argued for application of that pathway before the circuit court.

¶69 The record strongly favored recommitment. M.W. was initially committed in 2006 after attempting suicide at least 20 times. She was diagnosed with bipolar disorder, with acute psychotic symptoms, and has since received treatment in a stable environment. A registered psychiatrist with over 25 years of experience attempted to interview M.W. telephonically to determine the need for recommitment. M.W. hung up on the doctor during the examination, but the doctor observed in that time that M.W. was "manic, paranoid, angry, dysphoric, not rational, [and] making delusional comments." The doctor noted that M.W. eloped from her outpatient facility during the height of the COVID-19 pandemic (March 2020) without medication, money, or any sort of plan. Reviewing M.W.'s complete treatment record and applying his professional judgment, the doctor explained that M.W. has shown a "complete disregard for the need to get . . . help." The doctor stated "standard five" for mental

20

health commitment was "exactly how [M.W.] would be dangerous" if she were not recommitted. A trained behavior health manager who had worked directly with M.W. for months, provided testimony supporting the doctor's account. The manager described M.W. as erratic, unable to receive care outside commitment, and hostile to medication and non-pharmaceutical treatment. The only evidence presented against recommitment was testimony from M.W. herself, who described herself as independent, stable, and medication compliant. During the hearing, M.W. also became agitated and interrupted witnesses and the circuit court in unsolicited outbursts. In closing arguments, the County argued for application of the fifth dangerousness pathway.

¶70 The circuit court findings further supported recommitment. The circuit court quoted the recommitment pathway (D.J.W. had been decided only six months prior) and cited in detail the doctor's testimony. The court stated that M.W. "can become so psychotic . . . she doesn't take care of herself and that endangers her" and explained that, without treatment, "she is going to lack the services necessary for her health and safety." Finally, the circuit court reasoned that the advantages of medication had been explained to M.W., but she was not competent to understand those advantages to make informed decisions. The court clearly did not find M.W.'s testimony credible. See State v. Anson, 2005 WI 96, ¶32, 282 Wis. 2d 629, 698 N.W.2d 776 ("When . . . the trial court acts as the finder of fact it is the ultimate arbiter of both the credibility of the witnesses, and the weight to be given to each witness'

21

testimony." (quotations omitted)); Wis. Stat. § 805.17(2) (stating that findings of fact from a trial court are reviewed with "due regard . . . to the opportunity of the trial court to judge the credibility of the witnesses"). In all, if the court of appeals examined the record as a whole and the circuit court's statements, M.W.'s recommitment would have been affirmed under the fifth dangerousness pathway.

¶71 After the court of appeals reversed the recommitment order and remanded for further proceedings, M.W. appealed to this court challenging the court of appeals' chosen remedy for a D.J.W. violation. In the process, the County did not appeal the determination that D.J.W. was not adequately followed. The majority states that remand is not possible in this case because the circuit court lost competency. Majority op., ¶4. That is not true of all cases, and the majority opinion does not state that it is applying a categorical rule. See id., ¶4 ("As a consequence, reversal is the appropriate remedy in this case" due to the lack of competency). As members of a competent and well-trained judiciary, appellate courts should prudently analyze each case and determine the proper remedy case-by-case, as is done in all civil cases with inadequate circuit court findings. In cases where the circuit court still retains competency and can efficiently correct any D.J.W. errors, appellate courts must be permitted to consider remand to correct any D.J.W.-specification errors. The concern in D.J.W. was the lack of clarity in circuit court decisions; if a circuit court

22

can effectively resolve the uncertainty on remand, appellate courts should facilitate that result.

¶72 In holding that remand is not an available remedy in this case, the majority makes no effort to describe if, when, or how appellate courts can review whether the record supports commitment and affirm a circuit court's judgment even where there is a D.J.W. violation. The majority simply concludes "reversal is the appropriate remedy in this case." Majority op., ¶4. Harmless error is not mentioned once in the analysis. This is all despite the fact that the County thoroughly examined the evidence in support of M.W.'s commitment, asserted that M.W. should be recommitted under the fifth dangerousness pathway, and claimed that the only error in this case was a "procedural violation" whereby "the circuit court did not make its findings clear enough as to what standard it was basing its decision on." It was abundantly clear in its arguments that the County believed reversal in this case solely on the basis of a D.J.W. violation would be inappropriate given that the merits so strongly supported recommitment. Furthermore, M.W. argued "action in the court of appeals," in which the court of appeals would affirm the recommitment notwithstanding a D.J.W. violation, could be a possible remedy in this case. We have been asked to determine what the appropriate remedy is when a D.J.W. violation has been found; the issue is squarely before us. Affirming a recommitment on appeal upon review of the record is a remedy that can and should be used. And if that remedy were applied in this case, M.W.'s recommitment would be

23

affirmed. The failure of the majority to address the record and the circuit court's reasoning deprives the circuit court decision of the deference it is due.

¶73 This is a profound and extraordinarily important legal issue for this state. If D.J.W. requires automatic reversal of civil commitments for the lack of correct wording on the part of the circuit court, without any showing of structural error or prejudice, the court will be creating a remedy never before recognized in this state. It would cast aside over a century of appellate practice and precedents, and it would ignore explicit and on-point statutory language in favor of novel, judicially devised law. Wis. Stat. § 51.20(10)(c) ("[I]n every stage of an action, [the court shall] disregard any error or defect in the pleadings or proceedings that does not affect the substantial rights of either party."); Kraemer, 67 Wis. 2d at 320; Margaret H., 234 Wis. 2d 606, ¶37; Wis. Stat. § 805.18; Harran, 79 Wis. at 387; Martindale, 246 Wis. 2d 67, ¶30; 5 C.J.S. Appeal and Error, supra ¶51; Nelson, 355 Wis. 2d 722, ¶29; Pinno, 356 Wis. 2d 106, ¶49; S.Y., 162 Wis. 2d at 338-39; D.S., 142 Wis. 2d at 135-36.

¶74 While bearing the appearance of a limited decision, the majority opinion in this case has potentially significant consequences. The majority refuses to provide guidance to future courts as to how they should actually deal with D.J.W. errors. Can appellate courts review the record to determine if commitment is supported, despite a circuit court's failure to cite or reference a subdivision paragraph of Wis. Stat.

24

§ 51.20(1)(a)2.? Can appellate courts apply harmless error, or must they reverse as a matter of course all mental commitments, even those with overwhelming support in the record and in circuit court findings? The majority opinion leaves lower courts and Chapter 51 litigants in the dark. In so doing, today's decision practically guarantees further litigation and confusion. It may very well be that in the process, valid and necessary commitments are reversed for the lack of magic references to subdivision paragraphs of § 51.20(1)(a)2. Appellate courts can cite the majority's rejection of remand procedures in this case, its conclusion that "reversal is the appropriate remedy," and its conspicuous silence on other methods of review. Majority op. ¶4. They can observe that M.W.'s recommitment was reversed without any examination of the record. Other appellate courts, by contrast, may look to how every other civil and criminal appeal operates, and how every other Chapter 51 error is reviewed, and affirm valid commitments supported by the record and the circuit court's findings. Inconsistent standards and legal uncertainty work only to the detriment of those subject to Chapter 51 commitment proceedings.

¶75 By relying on a procedural error, and conducting no other analysis, the majority's decision avoids significant determinations that are due the state of Wisconsin and M.W. There is a time and place for avoiding extraneous legal issues, and there is a time and place for this court to provide clarity for Wisconsin's legal system. See Cook v. Cook, 208 Wis. 2d 166, 189, 560 N.W.2d 246 (1997) ("The purpose of the

25

supreme court is to oversee and implement the statewide development of the law." (quotations omitted)). By taking this case, but refusing to fully address the issues presented, the most consequential result of the majority's decision is increased legal uncertainty. If this court believes any and all Chapter 51 commitments should be reversed if the circuit court fails to reference a subdivision paragraph of Wis. Stat. § 51.20(1)(a)2., the court should make that clear. If the court does so, the legislature would at least have the opportunity to consider legislation to avoid the manifest injustice such a decision would engender.

### III.  CONCLUSION

¶27 The majority affirms the court of appeals' decision to reverse M.W.'s recommitment order. In addition, the majority reverses the court of appeals' decision to remand M.W.'s case to the circuit court for further proceedings. An appellate court cannot reverse a Chapter 51 recommitment on the basis of a D.J.W. error without first examining the record. The majority undertakes no such analysis here. In addition, the harmless error doctrine applies to D.J.W. errors. Because the court of appeals did not examine the record or apply a harmless error analysis, I would reverse the court of appeals' decision in full. M.W.'s recommitment should stand. Hopefully, this court will have the opportunity to properly address the issues identified in Justice Hagedorn's concurrence, including the appropriate appellate remedy for D.J.W. errors, in future

26

appeals.  <u>See</u> concurrence, ¶¶42-43.  The majority's conclusions in this case fall short of what is required.

¶76  For the foregoing reasons, I respectfully dissent.

¶77  I am authorized to state that Justices PATIENCE DRAKE ROGGENSACK and REBECCA GRASSL BRADLEY join this dissent.