COURT OF APPEALS
DECISION
DATED AND FILED

October 11, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2022AP286**

STATE OF WISCONSIN

Cir. Ct. No. **2021ME7**

IN COURT OF APPEALS
DISTRICT III

IN THE MATTER OF THE MENTAL COMMITMENT OF C. J.:

TREMPEALEAU COUNTY DEPARTMENT OF SOCIAL SERVICES,

PETITIONER-RESPONDENT,

V.

C. J.,

RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Trempealeau County: RIAN RADTKE, Judge. *Reversed*.

¶1 STARK, P.J.[1] Carter[2] appeals an order extending his involuntary commitment under WIS. STAT. § 51.20. Carter argues that the circuit court failed

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

to find that he was dangerous under any of the specific dangerousness standards set forth in § 51.20(1)(a)2. as required by *Langlade County v. D.J.W.*, 2020 WI 41, 391 Wis. 2d 231, 942 N.W.2d 277. Carter further argues that the Trempealeau County Department of Social Services failed to prove by clear and convincing evidence that he met the required elements for recommitment. We agree that the court violated *D.J.W.*'s mandate by failing to find that Carter was dangerous under any of the statutory standards. We therefore reverse the recommitment order.

## BACKGROUND

¶2 In March 2021, Carter was detained by law enforcement after officers performed a welfare check on Carter and his girlfriend. Carter's girlfriend informed officers that Carter had threatened to kill himself and her, was purposely driving recklessly, and had threatened to drive to Washington, D.C., to kill President Biden and Vice President Harris. After he was brought to a hospital, Carter demonstrated further signs of psychosis. The Department shortly after filed a WIS. STAT. ch. 51 involuntary commitment petition. The circuit court held a hearing on the Department's petition, and ordered Carter involuntarily committed for six months.

¶3 Prior to the expiration of the initial commitment, the Department petitioned to extend Carter's commitment for an additional twelve months. In support of the petition, the Department filed a report from a psychiatrist, Dr. J. Scott Persing. In preparation of the report, Persing reviewed Carter's records and interviewed Carter. In the report, Persing describes Carter's past

---

[2] For ease of reading, we refer to the appellant in this confidential appeal using a pseudonym, rather than his initials.

behavior that led to his original commitment and he explains that, at the time of Carter's initial hospital admission, Carter was in a "psychotic" state and "displayed disorganized thinking." Persing notes that, since his discharge from the hospital and transfer to a group home, Carter had "not required assistance with urgent appointments, crisis services, or [had a] repeat psychiatric hospitalization." Persing further notes that Carter was administering his own medication voluntarily under supervision.

¶4     During Persing's interview with Carter, Carter stated that he "has no issues with schizophrenia symptoms, specifically, delusions or hallucinations" and has "no interest in harming himself [or] anyone else." Additionally, Persing reports that Carter "denies any suicidal or homicidal thoughts." However, Persing then notes that "[r]ecords from informal communication … indicate that [Carter] continues to have ongoing psychotic symptoms." These records describe Carter's symptoms as "talking about the radio telling him good and bad things about his girlfriend" and as Carter having "delusions about doing illicit work for the government."

¶5     Persing's report was received into evidence during the subsequent recommitment hearing. During the hearing, Persing testified that Carter is currently diagnosed with paranoid schizophrenia. He stated that "[t]o the best of my knowledge, [Carter's] been fully compliant" with the treatment program. Persing also testified that Carter "has not caused significant problems at his current placement in the group home" which is evidence of improvement from before Carter was committed. During the interview, Carter told Persing that he was taking his medication. Nevertheless, Persing stated he did not believe that Carter "exhibits insight into the advantages and disadvantages and his need for medication." Persing testified that despite Carter's self-reporting that he had no

current issues "with schizophrenia symptoms, specifically delusions or hallucinations," Carter was still "experiencing symptoms." Persing also testified that Carter does not feel "there's any need for treatment, that it was a situational episode."[3]

¶6 Persing opined that Carter would be a proper subject for commitment if treatment were withdrawn. Persing explained that "at this point [Carter is] not fully in remission in my opinion with regard to control of his symptoms" and that the symptoms would return if treatment were withdrawn. Persing further stated that the "fact that [Carter's] not had his symptoms treated to baseline, that he is having these auditory hallucinations, as well, … makes me quite concerned that he could act out some of what's in his head about that." On cross-examination, Persing acknowledged that he had not personally observed any symptoms of delusion or psychosis while working with Carter, but the symptoms were "reported to me by an unbiased source regarding these occurring and being forwarded out of concern that the patient would not volunteer the information himself." Persing did not further elaborate as to the identity of this source.

¶7 Carter also testified at the recommitment hearing. He stated that he understood he is diagnosed with paranoid schizophrenia, but that his "symptoms have alleviated." Describing his past symptoms, Carter stated he was "not only

---

[3] The Department's briefing fails, at various points, to cite to the record and cites solely to the appendix or lacks any citation at all. On appeal, a party must include appropriate factual references to the record in its briefing. WIS. STAT. RULE 809.19(1)(d)-(e). The appendix is not the record. *See United Rentals, Inc. v. City of Madison*, 2007 WI App 131, ¶1 n.2, 302 Wis. 2d 245, 733 N.W.2d 322. This court has no obligation to scour the record to review arguments unaccompanied by adequate record citation. *Roy v. St. Lukes Med. Ctr.*, 2007 WI App 218, ¶10 n.1, 305 Wis. 2d 658, 741 N.W.2d 256. We admonish counsel that future violations of the Rules of Appellate Procedure may result in sanctions. *See* WIS. STAT. RULE 809.83(2).

hearing voices but … was completely delusional at that time." Carter stated that the last time he experienced similar symptoms was six months ago. When asked about the specific events leading to his commitment, Carter described them as "uncalled[]for" and "not right." Carter explained that he was hesitant to speak with Persing about the events leading to his commitment and his past symptoms because he was afraid that what he told Persing would be presented as something Carter was currently feeling and would be used against him. If he were to be released, Carter stated he has "stable living" and he is "hoping to get [his] career back" and go back to being a father to his children.

¶8 Carter testified about his medication, stating that he currently takes prescribed risperidone twice a day. Carter explained that throughout his commitment he voluntarily administered the medication to himself, and that he would request the medication from staff in the morning and at night. He testified that he started his current medication "about five months ago," that "[t]he medication entirely alleviates those symptoms that [he] was previously having," and that if "it wasn't for [his] past [he] would have no idea how much this medication is actually helping." Carter reported "no negative side effects from this medication" but stated that "the prior medication, Haldol, … did have side effects." Carter testified that he plans "on continuing to take this medication even after commitment ends," and he would "continue going to the pharmacy to pick up this medication because this medication is working." Carter stated that "The best way I can explain it is I don't feel it." He acknowledged that he was one-hundred percent certain he had a problem and that the problem is offset by medication.

¶9 Based upon Persing's report and testimony, the circuit court found that Carter suffers from paranoid schizophrenia, which is a treatable mental illness. The court noted there had been no new crisis during the prior commitment

and that Persing testified that Carter had shown improvement. Nevertheless, the court found that there was a substantial likelihood that Carter would be a proper subject for commitment if treatment were withdrawn. Specifically relying on Persing's "collateral information" that Carter continued to have delusional beliefs and auditory hallucinations, the court expressed concern that if treatment were withdrawn, Carter could act out the original auditory hallucinations that led him to be initially committed, making him a danger to himself or others. The court also found Carter competent to refuse medication. The court recommitted Carter for one year and he now appeals.

## DISCUSSION

¶10 Carter argues that this court must reverse the recommitment order based on the circuit court's failure to identify the specific subdivision paragraph of WIS. STAT. § 51.20(1)(a)2. under which the court found him to be dangerous. He further asserts that the Department failed to present clear and convincing evidence that he was currently dangerous. In a recommitment hearing, the petitioner has the burden to prove by clear and convincing evidence all required facts. WIS. STAT. § 51.20(13)(e); *Waukesha County v. J.W.J.,* 2017 WI 57, ¶19, 375 Wis. 2d 542, 895 N.W.2d 783. Whether the Department has met its burden of proof to extend Carter's commitment presents a mixed question of law and fact. *See J.W.J.*, 375 Wis. 2d 542, ¶15. The circuit court's findings of fact will be upheld unless they are clearly erroneous, but whether the facts satisfy the statutory standard is a question of law that we review de novo. *See id.*

¶11 Civil commitments constitute "a significant deprivation of liberty that requires due process protection." *Portage County v. J.W.K.*, 2019 WI 54, ¶16, 386 Wis. 2d 672, 927 N.W.2d 509. To prevail in a recommitment hearing,

6

the petitioner must prove by clear and convincing evidence that the subject is: "(1) mentally ill; (2) a proper subject for treatment; and (3) dangerous to themselves or others." *Sheboygan County v. M.W.*, 2022 WI 40, ¶¶17, 18, 402 Wis. 2d 1, 974 N.W.2d 733. Here, Carter only argues that the Department failed to meet its burden to show that he is dangerous to himself or others.

¶12 In an initial commitment hearing, dangerousness can be established any one of five separate ways. WIS. STAT. § 51.20(1)(a)2. Each of the five dangerousness standards requires the Department to identify evidence of recent acts or omissions demonstrating that the individual is a danger to himself, herself or to others. *J.W.K.*, 386 Wis. 2d 672, ¶17.

¶13 In a recommitment hearing, the petitioner is not required to identify recent acts or omissions to demonstrate dangerousness. Instead, the dangerousness requirement can be satisfied in part by "showing that there is a substantial likelihood, based on the subject individual's treatment record, that the individual would be a proper subject for commitment if treatment were withdrawn." WIS. STAT. § 51.20(1)(am). This paragraph recognizes "that an individual receiving treatment may not have exhibited any recent overt acts or omissions demonstrating dangerousness because the treatment ameliorated such behavior, but if treatment were withdrawn, there may be a substantial likelihood such behavior would recur." *J.W.K.*, 386 Wis. 2d 672, ¶19.

¶14 Despite the above principles, every recommitment hearing requires proof of *current* dangerousness. *D.J.W.*, 391 Wis. 2d 231, ¶34. Circuit courts in recommitment hearings are therefore required to make specific factual findings that a subject is currently dangerous by referencing a subdivision paragraph of

WIS. STAT. § 51.20(1)(a)2. on which the recommitment is based. ***D.J.W.***, 391 Wis. 2d 231, ¶40.

¶15     Here, Carter argues the circuit court violated ***D.J.W.***'s mandate by failing to identify the specific subdivision paragraph of WIS. STAT. § 51.20(1)(a)2. under which the court found him to be currently dangerous. In response, the Department asserts, without citation to the record, that the court made a finding that Carter was dangerous to himself and others under § 51.20(1)(a)2.a. and b., in conjunction with § 51.20(1)(am). According to the Department, based upon Carter's past treatment records, the court found that Carter is not stable enough for treatment to be withdrawn due to his lack of insight, continued auditory hallucinations, and delusional thinking. The Department reiterates that, according to Persing, Carter still poses a danger to himself and others, and the court therefore "made the required findings regarding the specific statutory dangerousness because dangerousness to self or others can only be found under … § 51.20(1)(a)2.a. and b."

¶16     An individual is dangerous under WIS. STAT. § 51.20(1)(a)2.a. if the person "[e]vidences a substantial probability of physical harm to himself or herself as manifested by evidence of recent threats of or attempts at suicide or serious bodily harm." Section 51.20(1)(a)2.b., in turn, permits a finding of dangerousness if an individual

> [e]vidences a substantial probability of physical harm to other individuals as manifested by evidence of recent homicidal or other violent behavior, or by evidence that others are placed in reasonable fear of violent behavior and serious physical harm to them, as evidenced by a recent overt act, attempt or threat to do serious physical harm.

Sec. 51.20(1)(a)2.b.

8

¶17 Contrary to the Department's assertion, the circuit court did not identify a specific statutory dangerousness standard in ordering Carter's recommitment. Instead, the court merely found that based upon Persing's report and testimony, "there [were] continued … auditory hallucinations" and it had "concerns that [Carter] could act on those." The court further stated that based on "the treatment record in the past[,] that meant threats of harm to self and harm to others."

¶18 As Carter correctly argues, "[t]he closest the court came to identifying a statutory dangerousness standard was when it remarked that [Carter's] treatment records from the past involved 'threats of harm to self and harm to others.'" Carter notes that this comment contains one element from each of the dangerousness standards in WIS. STAT. § 51.20(1)(a)2.a. and b. However, the court failed to find further facts supporting a conclusion that either dangerousness standard was met. Although the court stated that it relied on Persing's report and testimony, that evidence does not permit us to infer under which subdivision paragraph the court found Carter to be currently dangerous.

¶19 The circuit court summarily cited Persing's report and his testimony based upon unknown and vague source information to find that Carter continues to experience delusions and that if treatment were withdrawn, Carter would likely become a proper subject for commitment. The court explained the likelihood that Carter would become a proper subject for commitment was based on the possibility Carter could act on his delusions, and threaten to harm himself or others as he did in the past.

¶20 Nevertheless, the Department is required to prove by clear and convincing evidence that "the individual '*is* dangerous.'" ***D.J.W.***, 391 Wis. 2d

9

231, ¶34 (citation omitted). Both Persing and the circuit court merely expressed that Carter *could* be dangerous. "It is not enough that the individual was at one point dangerous" *id.*, and neither the Department nor the court specified how Carter is currently dangerous.

¶21 We therefore conclude that in ordering Carter's recommitment, the circuit court failed to make specific factual findings referencing a subdivision paragraph of WIS. STAT. § 51.20(1)(a)2., as required by *D.J.W.* Because the recommitment order has expired, the court lacks competency to conduct any proceedings on remand, and outright reversal of the recommitment order is the appropriate remedy. *See M.W.*, 402 Wis. 2d 1, ¶4. Accordingly, we reverse the recommitment order. Because we reverse based on the court's failure to comply with *D.J.W.*, we need not address Carter's additional argument regarding the sufficiency of the evidence. *See Turner v. Taylor*, 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628. 673 N.W.2d 716 (appellate court may decline to address all issues raised by the parties if one is dispositive).

*By the Court.*—Order reversed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.