**COURT OF APPEALS
DECISION
DATED AND FILED**

**November 23, 2022**

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

**Appeal No.   2022AP1357-FT**

**STATE OF WISCONSIN**

Cir. Ct. No.  2022ME30

**IN COURT OF APPEALS
DISTRICT II**

IN THE MATTER OF THE MENTAL COMMITMENT OF J.D.J.:

WINNEBAGO COUNTY,

   PETITIONER-RESPONDENT,

 V.

J.D.J.,

   RESPONDENT-APPELLANT.

APPEAL from orders of the circuit court for Winnebago County: BARBARA H. KEY, Judge. *Affirmed.*

¶1    GROGAN, J.[1]  J.D.J. appeals from two WIS. STAT. ch. 51 orders extending his commitment.  The circuit court ordered him recommitted for twelve months and ordered involuntary medication and treatment during that time.[2]  J.D.J. claims he is not dangerous and that the circuit court erred when it concluded the County proved that he was dangerous.  This court affirms.

## I.  BACKGROUND

¶2    J.D.J. has been diagnosed with schizophrenia, and his initial six-month commitment ended in March 2022.  Shortly before that date, Dr. George Monese, his treating psychiatrist, requested that his commitment be extended.  Dr. Monese advised that J.D.J. is a proper subject for treatment, opining that J.D.J. "is dangerous because there is a substantial likelihood, based on his treatment record, that he would become a proper subject for commitment if treatment were withdrawn."  The doctor said if treatment were withdrawn, J.D.J. would evidence dangerousness under the third and fifth statutory dangerousness standards.  Dr. Monese explained that due to J.D.J.'s schizophrenia, his judgment is impaired, and as a result, if released from commitment, J.D.J. would stop taking the medications that prevent his violent outbursts.

¶3    The County filed the formal petition to extend J.D.J.'s commitment, and the circuit court held a hearing on February 24, 2022.  Dr. Monese, Scott Cooke    (a    psychiatric    care    technician    (PCT)    at    the

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2019-20).  All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

[2] "Recommitment" is synonymous with "extension of commitment," and the terms will therefore be used interchangeably.  *See Sheboygan County v. M.W.*, 2022 WI 40, ¶6 n.3, 402 Wis. 2d 1, 974 N.W.2d 733.

Wisconsin Resource Center), and J.D.J. testified. Dr. Monese confirmed that he was J.D.J.'s treating psychiatrist, that he had met with J.D.J. just a few days before the hearing, had reviewed J.D.J.'s "medical records," had talked with his "treatment team," and had spoken with J.D.J.'s "mother directly on the phone to get more history about [J.D.J.'s] past experiences in treatment." Dr. Monese confirmed that J.D.J. has schizophrenia, a mental illness that is a substantial disorder of "[t]hought, mood, and perception[,]" which grossly impairs J.D.J.'s "[j]udgment, behavior, and capacity to recognize reality when off treatment." Dr. Monese indicated that J.D.J. would become a proper subject for commitment if his current treatment was withdrawn. The doctor believed that J.D.J. met the dangerousness standards under both "c and e" (the third and fifth standards of WIS. STAT. § 51.20(1)(a)2.c and § 51.20(1)(a)2.e).

¶4    Doctor Monese provided the following information during his testimony. J.D.J. did "not want to take the medication all the time. He wants to take it as needed[,]" but the medication that J.D.J. needs must be taken "at all times" or it will not "work as needed." J.D.J. believed he had AIDS and refused to believe he did not have AIDS despite the fact that he tested negative. J.D.J. did not believe he had a mental illness, but was "adamant that he has … AIDS" and wanted treatment for AIDS, not mental illness. According to Dr. Monese, J.D.J. insisted "that the food in the previous institution was poisoned."

¶5    The doctor also provided testimony about J.D.J.'s past "pattern of not taking the medications as prescribed and as a result he would become episodical or impulsively violent[.]" He told the circuit court that when a prior commitment order expired, J.D.J. did not do well, which led to the initial commitment in this case. Dr. Monese testified that J.D.J. "would not continue treatment" when a prior order expired, and "[t]hen [J.D.J.] had the relapse of

3

violent outbursts." The doctor explained that without medication, J.D.J. becomes violent and that J.D.J.'s expressed desire to be off medication is the basis to maintain his commitment. Dr. Monese testified that when J.D.J. "was given a chance to take the medication voluntarily[,]" he stopped taking the medication and "became violent[.]"

¶6 When asked whether, "if left untreated, [J.D.J.] would suffer either severe mental, emotional, or physical harm resulting in the loss of his ability to function independently within the community[,]" the doctor answered that J.D.J. would suffer "[s]evere mental" harm. When asked whether J.D.J. would access services if "care or treatment were made available in the community," Dr. Monese responded that J.D.J. "would not, because he doesn't believe he has mental illness."

¶7 PCT Cooke testified about an incident where J.D.J. took another person's "disbursement" for pepperoni pizza because J.D.J. did not think that person should be eating pepperoni. When Cooke told J.D.J. that he did not get to make decisions for other people, J.D.J. became confrontational, said "fuck you[,]" proceeded to "pull[] down his mask," and "attempted to spit on" Cooke. Then, Cooke testified that J.D.J. "began to take his shirt off and [acted] as if he was going to fight with me[,]" and "[a]fter he removed his shirt, [J.D.J.] did say[,] I'm going to fuck you up." When asked if this incident caused him to be "concerned for [his] own well-being," Cooke responded, "Yes."

¶8 J.D.J. testified that taking the medication interferes with his ability to practice his religion. He testified he does not need medication, that "[t]hey overmedicate me[,]" "[t]hey [are] trying to kill me[,]" and "[t]hey [are] not putting me on medication to help me, they [are] using medication to try to punish me."

4

J.D.J. denied attacking or spitting at anyone. He also testified that he is kept on a "behavioral health unit[,]" but that he does not have any "behavior problems."

¶9 The circuit court found that the County had proven J.D.J. was mentally ill, a proper subject for treatment, and dangerous. The circuit court relied on WIS. STAT. § 51.20(1)(am) in finding dangerousness with a link to § 51.20(1)(a)2.c and § 51.20(1)(a)2.e and entered orders recommitting J.D.J. for twelve months. While the court was giving its oral decision, J.D.J. started arguing with and screaming at the judge and called her a "[b]itch." Because J.D.J.'s verbal outburst prevented the circuit court from speaking, J.D.J. had to be removed from the courtroom. J.D.J. now appeals.

## II. DISCUSSION

¶10 This case involves a WIS. STAT. ch. 51 recommitment, which is governed by WIS. STAT. § 51.20. To involuntarily commit an individual, a county must establish by clear and convincing evidence that the person is mentally ill, a proper subject for treatment, and dangerous. Sec. 51.20(1)(a)1-2, (13)(e), (13)(g)3; *Waukesha County v. J.W.J.*, 2017 WI 57, ¶18, 375 Wis. 2d 542, 895 N.W.2d 783.

¶11 "To prevail in a recommitment proceeding, the petitioner must demonstrate the same three elements necessary for the initial commitment[,]" but "'WIS. STAT. § 51.20(1)(am) provides a different avenue for proving dangerousness if the individual has been the subject of'" commitment immediately before the recommitment petition. *Sheboygan County v. M.W.*, 2022 WI 40, ¶¶18-19, 402 Wis. 2d 1, 974 N.W.2d 733 (quoting *Portage County v. J.W.K*, 2019 WI 54, ¶19, 386 Wis. 2d 672, 927 N.W.2d 509). Dangerousness "'may be satisfied by a showing that there is a substantial likelihood, based on the subject

individual's treatment record, that the individual would be a proper subject for commitment if treatment were withdrawn.'" *M.W.*, 402 Wis. 2d 1, ¶20 (quoting WIS. STAT. § 51.20(1)(am)). This method of proving dangerousness is necessary because "'an individual receiving treatment may not have exhibited any recent overt acts or omissions demonstrating dangerousness because the treatment ameliorated such behavior, but if treatment were withdrawn, there may be a substantial likelihood such behavior would recur.'" *M.W.*, 402 Wis. 2d 1, ¶20 (quoting *J.W.K.*, 386 Wis. 2d 672, ¶19). If a county relies on § 51.20(1)(am) to prove dangerousness, a link to one of the five dangerousness standards from § 51.20(1)(a)2 is required. *Langlade County v. D.J.W.*, 2020 WI 41, ¶59, 391 Wis. 2d 231, 942 N.W.2d 277.

¶12 Here, J.D.J. only challenges the dangerousness prong of the three-part commitment standard. The circuit court found the County established dangerousness based on WIS. STAT. § 51.20(1)(am) and linked it to § 51.20(1)(a)2.c (the third) and § 51.20(1)(a)2.e (the fifth) dangerousness standards. The circuit court relied on Dr. Monese's and PCT Cooke's testimony in finding that J.D.J. was dangerous. The court referenced Dr. Monese's undisputed testimony that J.D.J. has a mental illness that "grossly impair[s] his judgment, behavior, and capacity to recognize reality" and that, if treatment were withdrawn, he would "be a proper subject for treatment" because he would be dangerous under the third and fifth dangerousness factors.

¶13 The third standard, WIS. STAT. § 51.20(1)(a)2.c, which as material to J.D.J., requires that J.D.J.:

> Evidences such impaired judgment, manifested by evidence of a pattern of recent acts or omissions, that there is a substantial probability of physical impairment or injury to himself or herself or other individuals. The probability of

6

physical impairment or injury is not substantial under this subd. 2.c. if reasonable provision for the subject individual's protection is available in the community and there is a reasonable probability that the individual will avail himself or herself of these services[.]

¶14 The circuit court explicitly stated that its decision was linked to the third standard, explaining that the third standard was supported by Dr. Monese's testimony about impaired judgment and PCT Cooke's testimony about J.D.J.'s recent threat to "'F' someone up" and attempt to spit at Cooke, despite being in a confined setting. The court found that J.D.J.'s actions "in a confined setting shows a significant degree of dangerousness that is directly related from the doctor's testimony to the lack of taking the medications needed given the mental illness here." Dr. Monese testified that without medication, J.D.J. would act violently. J.D.J. testified that he did not want to take medication and that he believed his treatment providers were trying to kill him by overmedicating him. There is sufficient evidence to support that the County proved by clear and convincing evidence that J.D.J. was currently dangerous based on WIS. STAT. § 51.20(1)(am) linked to the third dangerousness standard, § 51.20(1)(a)2.c.

¶15 The circuit court also linked J.D.J.'s dangerousness to the fifth standard, WIS. STAT. § 51.20(1)(a)2.e, but it is not necessary to address the fifth standard because this court has already concluded there is sufficient evidence of J.D.J.'s dangerousness under the third standard. *See Maryland Arms Ltd. P'ship v. Connell*, 2010 WI 64, ¶48, 326 Wis. 2d 300, 786 N.W.2d 15 ("[A]ppellate court[s] should decide cases on the narrowest possible grounds.").

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.

7