**COURT OF APPEALS
DECISION
DATED AND FILED**

**March 6, 2024**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP1267**

Cir. Ct. No. **2023ME34**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT II

IN THE MATTER OF THE MENTAL COMMITMENT OF T.S.:

WINNEBAGO COUNTY,

PETITIONER-RESPONDENT,

V.

T.S.,

RESPONDENT-APPELLANT.

APPEAL from orders of the circuit court for Winnebago County: BRYAN D. KEBERLEIN, Judge. *Reversed.*

¶1 NEUBAUER, J.[1] T.S., referred to herein by the pseudonym Terry, appeals from orders committing him involuntarily for six months and allowing Winnebago County to involuntarily medicate and treat him during the commitment period. Terry argues the circuit court failed to make specific factual findings with reference to any of the standards for dangerousness set forth in WIS. STAT. § 51.20(1)(a)2. as required under *Langlade County v. D.J.W.*, 2020 WI 41, ¶3, 391 Wis. 2d 231, 942 N.W.2d 277. He also contends that the County did not present sufficient evidence to establish dangerousness.

¶2 As discussed in greater detail below, this court concludes that the circuit court's ruling does not comport with *D.J.W.* The circuit court did not refer to any of the standards for dangerousness in WIS. STAT. § 51.20(1)(a)2. in its oral ruling or in the commitment order it entered after the hearing. Nor did it make factual findings sufficient to support a determination of dangerousness under any of those standards. The court did refer to, and make findings under, § 51.20(1)(am), but that is not sufficient to comply with *D.J.W.* Because the record lacks the required factual findings under any standard under § 51.20(1)(a)2., this court reverses the commitment and involuntary medication orders.

## BACKGROUND

¶3 In October 2018, Terry was found not guilty by reason of mental disease or defect on charges of stalking and violating a restraining order. Pursuant

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(d) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

to that finding, Terry was committed to the custody of the Wisconsin Department of Health Services. *See* WIS. STAT. § 971.17.

¶4 On January 23, 2023, several weeks before Terry's commitment under WIS. STAT. § 971.17 was to expire, a Statement of Emergency Detention was filed with the Dane County Circuit Court seeking to involuntarily commit and medicate Terry under WIS. STAT. § 51.20. A court commissioner found probable cause to believe that Terry met the requirements for commitment under § 51.20, ordered a final hearing, and transferred the case to the Winnebago County Circuit Court.

¶5 To establish a basis to involuntarily commit Terry, Winnebago County had to prove by clear and convincing evidence that Terry is mentally ill, a proper candidate for treatment, and dangerous to himself or others. *See* WIS. STAT. § 51.20(1)(a)1.-2., 13(e). At the final hearing held on February 7, 2023, the County's first witness, Dr. Marshall Bales, testified as to each of these elements. Bales is a psychiatrist who examined Terry on January 26, 2023, and prepared a report that was admitted into evidence over Terry's objection. Bales testified that Terry suffers from schizoaffective disorder, confirmed it was "a substantial disorder of … thought, mood and perception," and agreed that it "grossly impair[s Terry's] judgment, behavior, or capacity to recognize reality." Bales also agreed that Terry "is a proper subject for treatment."

¶6 WISCONSIN STAT. § 51.20(1)(a)2. sets forth five standards under which an individual may be considered dangerous. In his report, Bales indicated that Terry was dangerous under the second standard, § 51.20(1)(a)2.b., which states that an individual is dangerous if he or she

> [e]vidences a substantial probability of physical harm to other individuals as manifested by evidence of recent homicidal or other violent behavior, or by evidence that others are placed in reasonable fear of violent behavior and serious physical harm to them, as evidenced by a recent overt act, attempt or threat to do serious physical harm.

Bales's report includes information about Terry's WIS. STAT. § 971.17 commitment, including an incident in October 2022 in which Terry "was agitated with his treatment team," "threatened staff who attempted to escort him out of the room," and "tried to headbutt staff." Bales also wrote about an incident in December 2022 in which Terry "threatened a peer in the dayroom" and "was agitated, manic, threatening, paranoid, irritable, and labile."

¶7 The County asked Bales twice why he believed Terry was dangerous under the second standard. Bales initially responded as follows:

> Well, first of all, to his credit, he was never threatening to me. If anything, he was … overly friendly. But prior to all these correctional settings he's been in, whether the jail or Mendota, which has been I believe over a year or a long time, he was dangerous.

Shortly thereafter, Bales made the following additional comments:

> The main thing is that there is a pattern to this situation, even dating back to when he originally had these problems in 2018 and ultimately was adjudicated [not guilty by reason of mental disease or mental defect] and has been in all kinds of settings since. But the pattern is he denies mental illness, he will not take medications on a voluntary basis, and then when he's off medications, and with his denial of mental illness, he becomes dangerous.

¶8 Bales also testified regarding WIS. STAT. § 51.20(1)(am), which applies to individuals who receive treatment for mental illness immediately prior to the commencement of commitment proceedings. *See **D.J.W.***, 391 Wis. 2d 231, ¶32. Section 51.20(1)(am) recognizes that such individuals may not "exhibit[] any

4

recent overt acts or omissions demonstrating dangerousness because the treatment ameliorated such behavior." *Portage County v. J.W.K.*, 2019 WI 54, ¶19, 386 Wis. 2d 672, 927 N.W.2d 509. For such individuals, § 51.20(1)(am) relieves the petitioner of the obligation to prove dangerousness through recent acts or threats and instead permits a determination of dangerousness based on the likelihood that "such behavior would recur" if treatment were withdrawn:

> If the individual has been the subject of inpatient treatment for mental illness … immediately prior to commencement of the proceedings as a result of … a commitment or protective placement ordered by a court under … [WIS. STAT. §] 971.17, … the requirement[] of a recent overt act, attempt or threat to act under [§ 51.20(1)(a)2.b.] … may be satisfied by a showing that there is a substantial likelihood, based on the subject individual's treatment record, that the individual would be a proper subject for commitment if treatment were withdrawn.

*See J.W.K.*, 386 Wis. 2d 672, ¶19.

¶9 When asked why he thought WIS. STAT. § 51.20(1)(am) applied to Terry, Bales testified as follows:

> First of all, the direct interview with [Terry]. He was, plain and simple, symptomatic. He was hyperverbal, he was labile, he was grandiose. He knew more than the [c]ourts. He bashed Dr. Miller. He was better than the lawyer, didn't need one because he knew more than lawyers and doctors and so forth. He was grandiose. He was in a manic phase.
>
> There was some disorganization to his thinking, but generally, he was simply elevated. Never … suicidal in the interview, never threatening to me, but he did not see the need for mental healthcare. Now, historically, over a number of years here, he becomes dangerous in some way or threatening.

¶10 The County's other witness was Dr. Erik Knudson, a psychiatrist who serves as the associate medical director at the Mendota Mental Health

Institute. Knudson testified that he reviewed Terry's records and examined him approximately two and one-half weeks before the final hearing. Knudson opined that Terry is dangerous because "he has shown intermittent dangerous behavior associated with untreated symptoms of his mental illness, and as long as that illness is not treated, that risk continues."

¶11 Knudson also agreed that if Terry stopped receiving treatment, he would likely become a candidate for commitment. When asked why, he stated that Terry

> has a chronic mental illness called schizoaffective disorder. He has had symptoms of this condition for several years, and at this point in time, he has been declining treatment for it—or at least he was at the time of the letter that I wrote—and he had been refusing to accept recommended treatment from the doctors at Mendota for several months.
>
> Based upon my review of his treatment records, I have concerns about the potential for violence with [Terry] in response to those symptoms based off some incidents that took place where he was aggressive at Mendota[.]
>
> ….
>
> So my concern about the risk for violence is based off of symptoms observed at the hospital where he had been most recently and, in addition to that, the behavior described in the criminal complaint that led to his commitment under [WIS. STAT. §] 971.17(1), where he was found not guilty by reason of mental disease or defect.

¶12 Terry was the final witness at the hearing. He confirmed that he did not believe he is dangerous and identified the benefits and side effects of the medication he was taking. The County cross-examined Terry about a letter he wrote to his father's girlfriend in December 2022 in which he stated, "[I']ll be damned if I don't fight for my life [I']ll kill someone for trying to take mine." Terry explained that this statement referred to an incident at Mendota in which

"somebody was trying to fight me and trying to take my life … and they threatened me, to take my life, and I walked away from the fight before anything escalated past that." Terry also wrote in the letter: "Now [I']m ruthless [and] don't give [a] fuck [I']m done with being nice no more manners or being [a] gentleman treating others the way I want to be treated." Finally, Terry wrote that he was "starting to imagine killing for fun now," which he testified he wrote "[b]ecause the deer were outside and I like bow hunting and fishing and I'm a sportsman. There was a big ten-pointer outside."

¶13 In its closing argument, the County stated that Bales and Knudson had "testified to dangerousness; although, they deviated somewhat in that arena. Dr. Bales concluded, based on his review of records, that [Terry] was a second criteria for dangerousness, that being dangerous to others." The County stated that Terry's testimony about "the verbiage that he used in his letter" supported Bales's opinion. "However," the County argued, "the evidence is stronger for a finding that [Terry is] dangerous pursuant to [WIS. STAT. §] 51.20(1)(am), and that's essentially what … Dr. Knudson testified to."

¶14 Following closing arguments, the circuit court concluded that the County had proved the requirements for involuntary commitment and medication. With respect to the issue of dangerousness, the court concluded that "the elements as listed in [WIS. STAT. §] 51.20(1)(am) are satisfied," citing evidence that Terry had been treated recently, that he did not believe he had a mental illness, and Knudson's belief "that if treatment were withdrawn that [Terry] would … likely [be] a proper subject for commitment." The court also stated that "[t]he doctor testified he believed there would be a potential for violence given the symptoms that were observed at the hospital as well as what was listed in the original

criminal complaint." After addressing the County's request for an involuntary medication order, the court returned to its conclusion regarding dangerousness:

> So again, based on the credible testimony before the [c]ourt from both doctors, I do find that the elements are met under [§] 51.20(1)(am), as well as the need for the medication order. Based on that, I would order a six-month commitment to the [C]ounty.

In its oral ruling, the court did not refer to any of the five standards for dangerousness under § 51.20(1)(a)2.

¶15 Following the hearing, the court entered orders committing Terry for six months and allowing the County to involuntarily medicate and treat him. In the commitment order, the court did not check any of the boxes next to the standards for dangerousness under WIS. STAT. § 51.20(1)(a)2., but did check the box next to the § 51.20(1)(am) standard. At the end of the order, in a space provided for other comments, the following text appears: "(am) standard for dangerousness."

## DISCUSSION[2]

### I. The Circuit Court's Ruling Does Not Comply with *D.J.W.*

¶16 Terry contends that the circuit court erred by not making the findings required under *D.J.W.* In that case, our supreme court held that "circuit courts in recommitment proceedings are to make specific factual findings with reference to the subdivision paragraph of WIS. STAT. § 51.20(1)(a)2. on which the recommitment is based." *D.J.W.*, 391 Wis. 2d 231, ¶3. The court imposed this requirement for two reasons. First, it is intended to "provide[] clarity and extra protection to patients regarding the underlying basis for a recommitment." *Id.*, ¶42. Given the significant liberty interests that can be curtailed by involuntary commitment or medication, the specific factual findings requirement is designed "to ensure that recommitments are based on sufficient evidence." *Id.*, ¶43. The second reason given by the *D.J.W.* court is to "clarify issues raised on appeal …

---

[2] Terry acknowledges that his initial commitment has expired but argues that his appeal is not moot because he remains prohibited from possessing a firearm under the terms of the commitment order and subject to liability for the costs of his care and treatment. *See Marathon County v. D.K.*, 2020 WI 8, ¶25, 390 Wis. 2d 50, 937 N.W.2d 901 (concluding that appeal of an expired initial commitment order was not moot because the order "still subject[ed the individual] to the collateral consequence of a firearms ban"); *Sauk County v. S.A.M.*, 2022 WI 46, ¶24, 402 Wis. 2d 379, 975 N.W.2d 162 ("[A] person's mandatory liability for the cost of the care received during a recommitment is a collateral consequence that renders recommitment appeals not moot."). The County does not respond to this argument, which this court treats as a concession that Terry's appeal is not moot. *See United Coop. v. Frontier FS Coop.*, 2007 WI App 197, ¶39, 304 Wis. 2d 750, 738 N.W.2d 578 (failure to respond to an argument may be taken as a concession).

and ensure the soundness of judicial decision making, specifically with regard to challenges based on the sufficiency of the evidence." *Id.*, ¶44.[3]

¶17     As this court has explained, "*D.J.W.* requires a circuit court to provide *both* the applicable subdivision paragraph *and* specific factual findings to support a recommitment decision." *Ozaukee County v. J.D.A.*, No. 2021AP1148, unpublished slip op. ¶25 (WI App Dec. 15, 2021), *review denied*, 2022 WI 104, 997 N.W.2d 395.   Moreover, because the conclusion that an individual is dangerous is a legal determination rather than a factual one, "the 'specific factual findings' contemplated by *D.J.W.* must mean findings more specific than the court's ultimate legal conclusion of dangerousness." *Waupaca County v. J.D.C.*, No. 2023AP961, unpublished slip op. ¶14 (WI App Sept. 14, 2023).   Thus, a circuit court must do more than merely "[r]ecit[e] the language of the statute without discussing the specific facts supporting its legal conclusions." *J.D.A.*, No. 2021AP1148, ¶17.   Instead, it must "engage with the evidence by making specific findings of evidentiary fact, helping ensure that these proceedings reflect their 'serious nature.'" *J.D.C.*, No. 2023AP961, ¶18.

¶18     The circuit court's oral ruling and the commitment order do not comply with *D.J.W.*   To begin, the court did not refer to any of the five standards

---

[3] Our supreme court's decision in *Langlade County v. D.J.W.*, 2020 WI 41, ¶3, 391 Wis. 2d 231, 942 N.W.2d 277, concerned a recommitment order, but this court has applied *D.J.W.*'s holding to initial commitment appeals because the two purposes served by the specific factual findings requirement apply with equal force to initial commitments.   *See, e.g.*, *Trempealeau County v. C.B.O.*, Nos. 2021AP1955 and 2022AP102, unpublished slip op. ¶28 (WI App Aug. 30, 2022) ("[T]he rationale for our supreme court's decision in *D.J.W.* is equally applicable to initial commitments."); *Milwaukee County v. A.J.G.*, No. 2021AP1338, unpublished slip op. ¶13 & n.3 (WI App May 3, 2022) ("[W]e are not persuaded that an individual in an original commitment is entitled to any less protection or clarity than an individual in a recommitment proceeding.").

for dangerousness set forth in WIS. STAT. § 51.20(1)(a)2.a.-e. in its oral ruling. Nor did the court's remarks track the elements of any of those standards or explain how the evidence satisfied those elements. The court also did not specify that it had determined Terry to be dangerous under any of the five standards in the order it entered following the hearing; the boxes next to those standards in the order were all left unchecked.

¶19    The only legal standard that the circuit court referenced in its oral ruling and the commitment order is WIS. STAT. § 51.20(1)(am). Though the court referred to some of the evidence relevant to § 51.20(1)(am) in its oral ruling, that by itself is not sufficient under **D.J.W.** Even where § 51.20(1)(am) applies, the court must still ground its determination that an individual is dangerous in at least one of the standards set forth in § 51.20(1)(a)2.a.-e. *See* **D.J.W.**, 391 Wis. 2d 231, ¶41; *see also* **Winnebago County v. D.E.S.**, No. 2022AP251, unpublished slip op. ¶11 (WI App Aug. 31, 2022) ("Reliance on § 51.20(1)(am) establishes that the person is still dangerous because if treatment is withdrawn, one of the five criteria in § 51.20(1)(a)2[.] would recur. Thus, a circuit court, in extending a commitment in reliance on (am), must link that determination to one of the five dangerousness criteria in § 51.20(1)(a)2.").

¶20    The circuit court also referred in its oral ruling to testimony from one of the psychiatrists about Terry presenting, in the court's description, "a potential for violence given the symptoms that were observed at the hospital [and] what was listed in the original criminal complaint." This too does not satisfy **D.J.W.** For one thing, the court did not link this testimony to any of the five statutory standards for dangerousness. But even if it had, a factual finding that an individual presents a "potential for violence" is not sufficient to satisfy any of the five statutory standards because each requires proof that an individual presents a

11

"substantial probability" of harm to themselves or others. *See* WIS. STAT. § 51.20(1)(a)2.a.-e. As used in these standards, the phrase "substantial probability" means "much more likely than not." ***Marathon County v. D.K.***, 2020 WI 8, ¶35, 390 Wis. 2d 50, 937 N.W.2d 901. A mere "potential" to behave violently is not enough to establish a substantial probability of such behavior. *See id.*, ¶52 (stating that "mere possibility and conjecture are insufficient"); ***C.B.O.***, Nos. 2021AP1955 and 2022AP102, ¶41 ("Here, the circuit court's conclusion that Chris is currently dangerous was based entirely on its concern about Chris's potential future risk, which does not satisfy any of the standards under § 51.20(1)(a)2.").

¶21 It appears from the circuit court's oral ruling and the commitment order that the court believed a determination of dangerousness under WIS. STAT. § 51.20(1)(am) was sufficient to involuntarily commit Terry. It was not; as the ***D.J.W.*** court explained, § 51.20(1)(am) itself "mandates that circuit courts ground their conclusions in the subdivision paragraphs of [§ 51.20(1)(a)2]." ***D.J.W.***, 391 Wis. 2d 231, ¶41. Here, the court did not do so. It did not make factual findings sufficient to establish dangerousness under any standard in § 51.20(1)(a)2. and did not refer to any of those standards in its oral ruling or the commitment order. For these reasons, the court's ruling did not comply with ***D.J.W.***

## II. Remedy for the *D.J.W.* Violation

¶22 The parties disagree as to the consequences that flow from the circuit court's failure to comply with ***D.J.W.*** Terry argues that the error, by itself, merits reversal of the commitment and medication orders. Though he also contends that the evidence is insufficient to establish dangerousness under the second standard, WIS. STAT. § 51.20(1)(a)2.b.—the only standard identified by the County—he

argues that this court need not reach that argument. *See J.D.C.*, No. 2023AP961, ¶11 (reversing commitment and medication orders because of circuit court's failure to comply with *D.J.W.* and declining to address argument regarding sufficiency of the evidence).

¶23 The County disagrees, for several reasons. First, it contends that Terry's argument is not sufficiently developed because he did not cite any precedential authority establishing that *D.J.W.* violations, by themselves, warrant reversal of commitment orders. This argument is not well-taken. Terry adequately set forth the argument and cited *J.D.C.* as supporting authority. That there is no binding Wisconsin appellate authority on this issue does not render Terry's argument insufficiently developed.

¶24 The County also contends that Terry forfeited his ability to argue the *D.J.W.* violation merits reversal on appeal because he did not "allege a *D.J.W.* violation after the court's decision at the circuit court level." The County cites no authority that requires an individual to raise such an argument after a circuit court's ruling to preserve it for appeal.[4] Moreover, *D.J.W.*'s requirement of specific factual findings tied to one of the statutory standards for dangerousness is intended to facilitate appellate review of challenges to the sufficiency of the evidence, which are not subject to the forfeiture doctrine. *See* WIS. STAT. § 805.17(4); *Winnebago County v. A.P.D.*, No. 2023AP863, unpublished slip op. ¶23 n.13 (WI App Dec. 13, 2023). Because the County points to no legal

---

[4] Chief Justice Ziegler urged application of "the forfeiture doctrine to *D.J.W.* violations" in her dissenting opinion in *Sheboygan County v. M.W.*, 2022 WI 40, ¶63 n.5, 402 Wis. 2d 1, 974 N.W.2d 733 (Ziegler, C.J., dissenting), but her view did not garner the support of a majority of the court in that case.

authority requiring an individual to raise a *D.J.W.* violation in the circuit court, this court declines to deny Terry relief on that basis.

¶25    Finally, the County argues that even if the circuit court did not comply with *D.J.W.*, this court must examine the record to determine if it contains sufficient evidence to support a determination of dangerousness.  The County argues that sufficient evidence was presented to establish Terry's dangerousness under the second standard, WIS. STAT. § 51.20(1)(a)2.b., and § 51.20(1)(am).  It also notes that there was no uncertainty in the circuit court proceedings as to which standard the County was pursuing commitment under because Terry referred to the second standard in his closing argument.  Thus, the County argues, because neither the litigants nor the circuit court were uncertain about which dangerousness standard was at issue, and because this court can conclude from its own review of the record that sufficient evidence exists to support a determination of dangerousness under the second standard, any failure to comply with *D.J.W.* is, at most, harmless error.

¶26    This court disagrees with the County's contention that harmless error analysis is appropriate in this case.  Under *D.J.W.*, if a circuit court determines that the requirements for involuntary commitment have been met, it must make specific findings of fact drawing on the evidence presented to support its legal determination that an individual is dangerous under one of the standards in WIS. STAT. § 51.20(1)(a)2.a.-e.  As the *D.J.W.* court explained, one reason for this obligation is to facilitate appellate review of commitment orders, specifically when an individual argues that sufficient evidence does not exist to support the circuit court's determination of dangerousness.  *D.J.W.*, 391 Wis. 2d 231, ¶44.  In the event such a challenge is raised, *D.J.W.* is intended to ensure that this court will have findings of fact from the circuit court to review.  Such findings are

necessary in order for this court to analyze whether the record contains sufficient evidence to support them.

¶27 Here, those findings are absent. Though the County is correct that the only dangerousness standard in WIS. STAT. § 51.20(1)(a)2. raised in the circuit court was the second standard, the transcript of the circuit court's oral ruling contains only one comment from the court that could be construed as a factual finding related to that standard. That comment is the court's description of testimony that one of the psychiatrists "believed there would be a potential for violence given the symptoms that were observed at the hospital as well as what was listed in the original criminal complaint." Even if this court construed that comment as related to the second standard, it would not support a determination of dangerousness because it does not "[e]vidence[] a *substantial probability* of physical harm to other individuals." *See* § 51.20(1)(a)2.b. (emphasis added). The court's other remarks pertained either to § 51.20(1)(am), the other requirements for involuntary commitment, or the County's request for an involuntary medication order.[5]

¶28 After *D.J.W.* was decided, our supreme court held, in *Sheboygan County v. M.W.*, 2022 WI 40, 402 Wis. 2d 1, 974 N.W.2d 733, that reversal rather than remand for factual findings was the appropriate remedy for a *D.J.W.* error because the commitment order at issue had expired. Because the county in that

---

[5] Because it is evident from the hearing transcript that the circuit court did not understand it was required to make factual findings to support a determination of dangerousness under one of the standards in WIS. STAT. § 51.20(1)(a)2., and did not make any such findings, the court's failure to check one of the boxes next to those standards in its written order is not, as the County contends, merely a "clerical error" that this court may overlook.

case did not challenge the **D.J.W.** error itself, the only issue was the appropriate remedy. **M.W.**, 402 Wis. 2d 1, ¶38.[6]

¶29    Though a majority of our supreme court has not squarely addressed harmless error, this court has on several occasions reversed commitment orders that did not comply with **D.J.W.** without first examining the sufficiency of the evidence to support them or analyzing whether the **D.J.W.** violations were harmless. *See **J.D.C.***, No. 2023AP961, ¶11; **J.D.A.**, No. 2021AP1148, ¶¶24-25 & n.4; *see also **C.B.O.***, Nos. 2021AP1955 and 2022AP102, ¶32 (stating that this court "could reverse the circuit court's initial commitment order based on the **D.J.W.** violation alone" but examining the sufficiency of the evidence on dangerousness "for the sake of completeness").

¶30    Absent definitive and contrary guidance on this issue from our supreme court, this court concludes that it would not be appropriate to conduct a sufficiency of the evidence analysis or assess harmless error in this case. This is not a case in which the circuit court made factual findings sufficient to establish dangerousness under one of the standards in WIS. STAT. § 51.20(1)(a)2. but neglected to refer to the standard in its ruling, or inadvertently referred to the incorrect standard. *See **Rock County v. J.J.K.***, No. 2020AP2105, unpublished slip op. ¶41 (WI App May 6, 2021) (concluding that a circuit court's inadvertent reference to the fifth standard "was surely harmless" because the record "reflect[ed] that the circuit court was contemplating the applicable fourth

---

[6] In her dissent in **M.W.**, Chief Justice Ziegler argued that "appellate courts must examine the record as a whole and apply a harmless error analysis even when a **D.J.W.** error is found." **M.W.**, 402 Wis. 2d 1, ¶46 (Ziegler, C.J., dissenting). Again, a majority of the court did not join her opinion.

standard"). Nor is it a case in which the individual did not challenge the sufficiency of the evidence to support a commitment order on appeal. *See **Barron County v. K.L.**,* No. 2021AP133, unpublished slip op. ¶¶36-38 (WI App Aug. 9, 2022) (concluding that failure to specify a standard of dangerousness was harmless where the individual did not challenge sufficiency of the evidence on appeal and "it is clear from the record" which standard the circuit court applied).

¶31    Here, in contrast, the circuit court failed to identify any of the standards in WIS. STAT. § 51.20(1)(a)2. in its ruling and failed to make factual findings that could support a determination of dangerousness under any of those standards. Essentially then, there is no ruling on the issue of dangerousness under those standards for this court to review.

¶32    Moreover, it would be inappropriate for this court to engage in its own fact-finding based on the evidence presented at the commitment hearing to determine whether findings supporting a determination of dangerousness under the second standard could have been made. Aside from the fact that it is not this court's role to be a finder of fact in chapter 51 commitments, the issue of dangerousness here involves disputed evidence and credibility determinations that this court is particularly unsuited to make.

¶33    Application of the second standard through the lens of the WIS. STAT. § 51.20(1)(am) standard requires examining evidence for indications that, if an individual's treatment were withdrawn, the individual would again display "a substantial probability of physical harm to other individuals as manifested by evidence of … homicidal or other violent behavior, or by evidence that others are placed in reasonable fear of violent behavior and serious physical harm to them, as evidenced by a[n] … overt act, attempt or threat to do serious physical harm." *See*

17

§ 51.20(1)(a)2.b. Here, the County relies in part on the letter Terry wrote in which he made references to killing and being "ruthless." The County argues that the contents of the letter, along with other evidence, meet the second standard. But Terry offered explanations for those references in his testimony that, if believed, could cause a finder of fact to conclude that the letter was entitled to little or no weight in relation to the second standard. To assess the weight of this evidence, the finder of fact must necessarily determine whether Terry's explanations were credible. Those are assessments for the circuit court to make, not this court. *See Ebert ex rel. Krueger v. Kettner*, 151 Wis. 2d 880, 883, 447 N.W.2d 62 (Ct. App. 1989) ("Credibility and weight to be given witnesses is for the fact finder and not the appellate court."). Here, however, the circuit court made no findings of fact based on the contents of the letter. Nor did it make any assessment on the record of Terry's credibility as a witness. Having not been present for Terry's testimony, this court is not in a position to make these determinations.[7]

---

[7] Because the court of appeals has received a substantial number of WIS. STAT. ch. 51 appeals challenging the sufficiency of the evidence, this court is compelled to also point out that the disputed and conclusory evidence would not support a determination of dangerousness. The County's burden to establish dangerousness under the second standard and WIS. STAT. § 51.20(1)(am) required it to prove, by clear and convincing evidence, that if Terry's treatment were withdrawn, it is much more likely than not that he would cause physical harm to other individuals, "as manifested by evidence of … homicidal or other violent behavior, or by evidence that others are placed in reasonable fear of violent behavior and serious physical harm to them, as evidenced by a[n] … overt act, attempt or threat to do serious physical harm." *See* § 51.20(1)(a)2.b., (1)(am), (13)(e); *D.K.*, 390 Wis. 2d 50, ¶42. Setting aside the letter Terry wrote and his testimony about it, which were not the basis of any factual findings by the circuit court, the remaining evidence presented consisted of the testimony of Bales and Knudson and Bales's report.

(continued)

## CONCLUSION

¶34 For the reasons stated above, this court concludes that the circuit court's ruling does not comply with **D.J.W.** Furthermore, given the state of the record here, this court declines to address the sufficiency of the evidence presented on the issue of dangerousness or to assess whether the **D.J.W.** violation was harmless error. Accordingly, the appropriate remedy in this case is to reverse the commitment order and the involuntary medication order.

*By the Court.*—Orders reversed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)

---

Bales testified that Terry had been "dangerous" or "threatening" in the past, but provided no details about the words or behavior that merited those labels. Knudson testified that his opinion was based on "the behavior described in the criminal complaint that led to his commitment under [WIS. STAT. §] 971.17(1)," but did not describe that behavior. Knudson also testified that Terry "has shown intermittent dangerous behavior associated with untreated symptoms of his mental illness," but again did not provide any details concerning that behavior. Finally, the County fails to sufficiently address Terry's contention that the incidents in Bales's report were inadmissible hearsay insofar as they were relied upon in proving dangerousness, and in fact, conceded that such testimony was not admitted for the truth of the matter asserted. But, even if those were admissible to show prior incidents, Bales's report states, in similarly conclusory fashion, that Terry was "threatening" in the past when he refused to take medication and that he "threatened staff," "tried to headbutt staff," and "threatened a peer" in late 2022. Absent greater specificity concerning what Terry said or did that, in the view of Knudson and Bales, was dangerous or threatening, their testimony and Bales's report would not provide clear and convincing evidence sufficient to show dangerousness under WIS. STAT. § 51.20(1)(a)2.b.

19