COURT OF APPEALS
DECISION
DATED AND FILED

July 23, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2023AP2339**

STATE OF WISCONSIN

Cir. Ct. No. **2023ME159**

IN COURT OF APPEALS
DISTRICT III

---

IN THE MATTER OF THE MENTAL COMMITMENT OF J. D. T.:

BROWN COUNTY,

    PETITIONER-RESPONDENT,

  V.

J. D. T.,

    RESPONDENT-APPELLANT.

---

APPEAL from orders of the circuit court for Brown County: BEAU G. LIEGEOIS, Judge. *Affirmed*.

¶1 GILL J.[1] John[2] appeals orders for his involuntary commitment pursuant to WIS. STAT. § 51.20 and for his involuntary medication and treatment

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

pursuant to WIS. STAT. § 51.61(1)(g). John argues that Brown County failed to provide sufficient evidence of his dangerousness and that the circuit court failed to make the required factual findings regarding his dangerousness. We disagree and accordingly, we affirm.[3]

## BACKGROUND

¶2      John was emergently detained in April 2023 after he was taken into custody for sexual assault after sexually touching a minor employee at a restaurant and "attempting to kiss her." While in custody, John explained that he had engaged in sexual contact with the employee because he was "trying to be a witness to God," "was trying to spread purity to all women," and that he would continue to "spread [his] purity" to women if he were released from custody.

¶3      After a hearing, the circuit court found that there was probable cause to have John involuntarily committed pursuant to WIS. STAT. § 51.20. The court ordered that John be examined and scheduled a final hearing. At the final hearing, the County called three witnesses: Brown County Sheriff's Office Deputy Joshua Kraft, hospital clinician Rhyah Jungwirth, and psychiatrist Marshall Bales.

¶4      Kraft testified that he responded to the sexual assault and took John into custody. Kraft stated that he then transported John to a hospital for "medical clearance." While at the hospital, John consented to having his blood drawn.

---

[2] For ease of reading, we refer to the appellant in this confidential matter using a pseudonym, rather than his initials.

[3] John does not raise any arguments on appeal specifically regarding the order for his involuntary medication and treatment. Thus, we affirm both the involuntary commitment order and the order for involuntary medication and treatment.

2

When a hospital technician began drawing his blood, however, John told the technician that John "was going to rape his mother."[4]

¶5      Jungwirth testified to the facts set forth above. *See supra* ¶2. Jungwirth also stated that John believed he had "transferred" his "spirit" to the minor employee—whom he had assaulted—by giving her a dollar bill. Further, during Jungwirth's examination of John, John "reached out his hands to touch [Jungwirth's] chest" and he would have continued to try to touch her chest if an officer had not stopped him.

¶6      Doctor Bales testified that he examined John and diagnosed him with schizoaffective disorder. Bales opined that John continued to be psychotic as of the date of his examination but that his condition was treatable with medication.[5]  Bales stated that he discussed the advantages, disadvantages, and alternatives to medication with John, but that John responded with a "nonsensical, almost incoherent" statement that the medication would take away his "God-given abilities" and that he would not take medication voluntarily. Bales opined that John was not competent to refuse medication due to John's mental illness

---

[4] In its oral ruling, the circuit court stated that John threatened to rape his own mother. On appeal, John argues that the court's finding regarding this statement was clearly erroneous. John concedes that he made the comment about raping a mother, but he clarifies that he made this statement regarding the hospital technician's mother rather than his own mother.

Assuming without deciding that the circuit court's statement about John threatening to rape his own mother was clearly erroneous, the error does not affect our analysis or our ultimate determination that the evidence was sufficient to establish John's dangerousness. For purposes of our analysis, the important point—which John does not dispute—is that John threatened to rape someone's mother.

[5] According to Dr. Bales, John had been medicated for five days when Bales performed his examination. Bales stated that "it can take sometimes weeks" to determine the right combination of medications for a patient.

preventing him from understanding the advantages, disadvantages, and alternatives to his treatment.

¶7 John testified about his religious beliefs, stated that his medication "is not necessary for human life," listed some of the disadvantages of his medication, and stated that there was "false testimony" at the hearing.

¶8 The circuit court found that John was mentally ill, dangerous, and a proper subject for treatment. Regarding John's dangerousness, the court noted that

> [John] had one incident where he actually did have sexual contact with somebody and then made a comment about just the religious nature of having the sexual contact. And then we have a witness testifying here today, a female witness, that he attempted to have sexual contact with her as well. And then he makes a comment to the police officer that he is going to rape his own mother.
>
> ....
>
> So I think that does meet the standard of [WIS. STAT. §] 51.20(1)(a)2.b. and c., that there is a substantial probability by evidence that others are placed in reasonable fear of violent behavior and serious physical harm to them as evidenced by a recent overt act to do serious physical harm.

The court then found John dangerous under § 51.20(1)(a)2.b. and 2.c. and entered orders for John's involuntary commitment and for his involuntary medication and treatment. John now appeals.

**DISCUSSION**

¶9 John argues that the County presented insufficient evidence of his dangerousness under WIS. STAT. § 51.20(1)(a)2.c.[6] Specifically, John contends that the County "presented no facts" upon which the circuit court could find him dangerous under § 51.20(1)(a)2.c. Further, John argues that the court failed to make specific factual findings as to his dangerousness, as is required by ***Langlade County v. D.J.W.***, 2020 WI 41, 391 Wis. 2d 231, 942 N.W.2d 277.[7]

¶10 Whether the County presented sufficient evidence of John's dangerousness under WIS. STAT. § 51.20 is a mixed question of law and fact. *See **D.J.W.***, 391 Wis. 2d 231, ¶¶24-25. "[W]e will uphold a circuit court's findings of fact unless they are clearly erroneous. A finding of fact is clearly erroneous if it is against the great weight and clear preponderance of the evidence." ***Id.***, ¶24. "Whether the facts satisfy the statutory standard is a question of law that we

---

[6] John also argues that the County presented insufficient evidence of his dangerousness under WIS. STAT. § 51.20(1)(a)2.b. We conclude that the County presented sufficient evidence of John's dangerousness under § 51.20(1)(a)2.c., and thus we need not address John's arguments regarding § 51.20(1)(a)2.b. *See **Turner v. Taylor***, 2003 WI App 256, ¶1 n.1, 268 Wis. 2d 628, 673 N.W.2d 716 (concluding that this court need not address all issues raised by the parties if one is dispositive).

[7] As an initial matter, the County argues that John's appeal is moot because his commitment has expired and because John was already subject to a firearm ban due to a prior involuntary commitment. We reject the County's argument. Our supreme court has made clear that an appeal of an expired involuntary commitment order is not moot due to the practical effect that the appeal will have on the patient's firearm rights and cost of care. ***Sauk County v. S.A.M.***, 2022 WI 46, ¶¶23-24, 402 Wis. 2d 379, 975 N.W.2d 162. While John may have already been subject to a firearm ban, reversing the appealed order for John's commitment would "practically alter" his "'record and reputation' for dangerousness, a factor a reviewing court must consider when weighing a petition to cancel a firearms ban." ***Id.***, ¶23 (citation omitted). Further, John's appeal is not moot due to WIS. STAT. § 46.10(2)'s mandatory language imposing the cost of care for an involuntary commitment on the patient. *See **S.A.M.***, 402 Wis. 2d 379, ¶¶24-25.

review de novo." *Waukesha County v. J.W.J.*, 2017 WI 57, ¶15, 375 Wis. 2d 542, 895 N.W.2d 783.

¶11 John's appeal also raises an issue of statutory interpretation, which is a question of law that we review de novo. *See Nowell v. City of Wausau*, 2013 WI 88, ¶19, 351 Wis. 2d 1, 838 N.W.2d 852. "[S]tatutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.' Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." *State ex rel. Kalal v. Circuit Ct. for Dane Cnty.*, 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (citation omitted).

¶12 To be subjected to a WIS. STAT. ch. 51 involuntary commitment, three elements must be proven by clear and convincing evidence: "the subject individual must be (1) mentally ill; (2) a proper subject for treatment; and (3) dangerous to themselves or others."[8] *D.J.W.*, 391 Wis. 2d 231, ¶29. WISCONSIN STAT. § 51.20(1)(a)2.c. provides that an individual is dangerous if he or she "[e]vidences such impaired judgment, manifested by evidence of a pattern of recent acts or omissions, that there is a substantial probability of physical impairment or injury to himself or herself or other individuals."[9]

¶13 During an involuntary commitment proceeding, the circuit court must make "specific factual findings with reference to the subdivision paragraph

---

[8] John does not contest that he is mentally ill and a proper subject for treatment.

[9] WISCONSIN STAT. § 51.20(1)(a)2. provides a total of five ways of establishing dangerousness. The other four ways of establishing dangerousness are not at issue in this appeal.

of [WIS. STAT.] § 51.20(1)(a)2. on which" the commitment is based. ***D.J.W.***, 391 Wis. 2d 231, ¶40; ***Trempealeau County v. C.B.O.***, Nos. 2021AP1955, 2022AP102, unpublished slip op. ¶28 (WI App Aug. 30, 2022) (concluding that ***D.J.W.*** applies to initial commitment proceedings). This mandate has two requirements: (1) that the circuit court make specific factual findings regarding the patient's dangerousness; and (2) that the circuit court identify the specific standard of dangerousness on which the commitment is based. *See **Sheboygan County v. M.W.***, 2022 WI 40, ¶41, 402 Wis. 2d 1, 974 N.W.2d 733 (Hagedorn, J., concurring).

¶14 John largely ignores the evidence of his dangerousness under WIS. STAT. § 51.20(1)(a)2.c. While John states that the County "presented no facts" to support the dangerousness finding, the testimony at the commitment hearing tells a different story. Jungwirth testified that John sexually assaulted a minor in an effort to "spread his purity," that John was "trying to spread his purity to all women," and that he would continue to attempt to "spread his purity to women" "if he [were] released from custody." Jungwirth also stated that John attempted to reach for her chest during her examination of him and that John would have continued to try to touch her if an officer was not present. Further, Kraft testified that during a blood draw, John told a hospital technician that he was going to rape "his mother."

¶15 These undisputed facts sufficiently prove, by clear and convincing evidence, that John engaged in a pattern of recent acts such that he evidences a substantial probability of physical impairment or injury to himself or others. While WIS. STAT. § 51.20(1)(a)2.c. does not define "physical impairment" or "injury," we conclude that sexual assault and rape certainly fall within the statute's meaning of harming others. The facts set forth above establish that John engaged

in a pattern of both having sexual contact with women and threatening to sexually assault women in an effort to "spread his purity" and that John would continue to commit sexual assault if he were released from custody. Further, the circuit court could have reasonably found that there was a substantial probability that John himself would be injured by people acting in self-defense to John's sexual assaults.

¶16 Regarding John's dangerousness, as noted, the circuit court stated that:

> [John] had one incident where he actually did have sexual contact with somebody and then made a comment about just the religious nature of having the sexual contact. And then we have a witness testifying here today, a female witness, that he attempted to have sexual contact with her as well. And then he makes a comment to the police officer that he is going to rape his own mother.
>
>  ….
>
> So I think that does meet the standard of [WIS. STAT. §] 51.20(1)(a)2.b. and c.

The court then went on to discuss § 51.20(1)(a)2.b. While the court certainly could have provided more factual findings regarding § 51.20(1)(a)2.c, the court made specific factual findings regarding John's dangerousness and identified the specific standards of dangerousness on which the commitment was based. Thus, the court satisfied both of ***D.J.W.***'s requirements. *See **M.W.**, 402 Wis. 2d 1, ¶41 (Hagedorn, J., concurring).

¶17 Finally, John argues that the circuit court relied on impermissible hearsay testimony regarding his sexual assault of the restaurant employee. We reject this argument as undeveloped. *See **State v. Pettit**, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992). Regardless, Jungwirth testified that John spoke

to her about the sexual assault, but John does not address the admission by party opponent exclusion to the rule against hearsay. *See* WIS. STAT. § 908.01(4)(b). Further, John did not object to the alleged hearsay at the commitment hearing, nor does he provide this court with an analysis of whether the plain error doctrine applies to the circuit court's alleged error in admitting the hearsay. *See* WIS. STAT. § 901.03(4); ***State v. Jorgensen***, 2008 WI 60, ¶21, 310 Wis. 2d 138, 754 N.W.2d 77. We therefore conclude that John forfeited his hearsay argument.

*By the Court.*—Orders affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.