**COURT OF APPEALS**
**DECISION**
**DATED AND FILED**

**February 4, 2025**

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2024AP1052-FT**

STATE OF WISCONSIN

Cir. Ct. No. **2023ME26**

**IN COURT OF APPEALS**
**DISTRICT III**

IN THE MATTER OF THE CONDITION OF R.B.:

TREMPEALEAU COUNTY,

PETITIONER-RESPONDENT,

V.

R. B.,

RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Trempealeau County: THOMAS W. CLARK, Judge. *Affirmed*.

¶1 GILL, J.[1] Rachel[2] appeals an order extending her involuntary commitment pursuant to WIS. STAT. § 51.20. Rachel argues that Trempealeau

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2021-22). This is an expedited appeal under WIS. STAT. RULE 809.17 (2021-22). All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

County presented insufficient evidence of her dangerousness, an essential element for the extension of a commitment. We affirm.

## BACKGROUND

¶2 In July 2023, Rachel was emergently detained and subsequently involuntarily committed pursuant to WIS. STAT. ch. 51. Prior to her emergency detention, the County was notified that Rachel had been hearing voices telling her to kill herself and that she had been injuring herself by hitting her arms on walls and doors. In December 2023, the County petitioned to have Rachel's involuntary commitment extended. Rachel was examined by a psychiatrist, Dr. Jeffrey Marcus. Shortly thereafter, the circuit court held a final hearing to determine whether to extend Rachel's commitment.

¶3 At the hearing, Dr. Marcus testified that he diagnosed Rachel as having a psychotic disorder.[3] He opined that Rachel would decompensate and present a danger to herself if treatment were withdrawn. Marcus additionally testified that Rachel's mental illness was treatable, that she had improved substantially while on her medication, and that she had been amenable to treatment.[4] However, Marcus then explained that Rachel had recently been

---

[2] For ease of reading, we refer to the appellant in this confidential matter using a pseudonym, rather than her initials.

[3] At the hearing, Dr. Marcus testified that Rachel's psychotic disorder is either a bipolar disorder or a primary psychotic disorder, but he explained that he was unable to narrow down the diagnosis further. Marcus then opined that either diagnosis meets the definition of mental illness as defined in WIS. STAT. ch. 51.

[4] Doctor Marcus also opined that Rachel was competent to decide whether to accept medication. The circuit court did not enter an order for Rachel's involuntary medication or treatment.

hospitalized twice[5] and that her condition could "deteriorate rapidly" "if there is not follow-through."

¶4     Jamie Kurth, a social worker for Trempeauleau County's Department of Human Services, also testified at the hearing. Kurth stated that she was Rachel's case manager, that Rachel had been doing well while committed, but that Rachel had been subject to "a lot of stressors lately." According to Kurth, one week prior to the final hearing, Rachel had been stressed and had been having some suicidal ideations. Kurth also expressed concern about Rachel's ability to get transportation to her treatment appointments, as she does not have a driver's license.

¶5     The circuit court found that Rachel would present a substantial probability of physical harm to herself if treatment were withdrawn under WIS. STAT. § 51.20(1)(a)2.a. and § 51.20(1)(am). The court then ordered that Rachel's commitment be extended for one year.[6] Rachel now appeals.

---

[5] Dr. Marcus did not explain why Rachel had been hospitalized twice.

[6] In the event that the circuit court extended her commitment, Rachel asked the court to order only a six-month extension, as opposed to twelve months. In response, the County requested that Rachel's commitment be extended by twelve months. The court extended Rachel's commitment by twelve months.

Rachel included a footnote in her appellate brief stating: "The circuit court entered a twelve-month order based on the fact that Dr. Marcus did not testify to a 'time limit,' but this fact actually weighs against the court's order. … The County has the burden to prove the necessity of a commitment." However, Rachel does not develop any arguments or reference any legal authority related to the duration of the extension of her commitment. We need not address undeveloped arguments. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992). In addition, we deem any argument regarding the duration of the extension abandoned, based on Rachel's failure to raise it with sufficient prominence in her appellate briefs. *See A.O. Smith Corp. v. Allstate Ins., Cos.*, 222 Wis. 2d 475, 491, 588 N.W.2d 285 (Ct. App. 1998) ("[A]n issue raised in the [circuit] court, but not raised on appeal, is deemed abandoned.").

3

**DISCUSSION**

¶6      The sole issue on appeal is whether the County provided sufficient evidence to prove that Rachel is dangerous under WIS. STAT. § 51.20.  Whether there was sufficient evidence of Rachel's dangerousness presents a mixed standard of review.  *See* ***Outagamie County v. Melanie L.***, 2013 WI 67, ¶¶38-39, 349 Wis. 2d 148, 833 N.W.2d 607.  We will not disturb a circuit court's factual findings unless they are clearly erroneous.  ***Id.***, ¶38.  Whether those facts satisfy the statutory standard, however, is a question of law that we review de novo. ***Id.***, ¶39.

¶7      In order to extend a subject's involuntary commitment, the petitioner must demonstrate by clear and convincing evidence that three elements are met:  "the subject must be (1) mentally ill; (2) a proper subject for treatment; and (3) dangerous to themselves or others."[7]  ***Sheboygan County v. M.W.***, 2022 WI 40, ¶¶17-18, 402 Wis. 2d 1, 974 N.W.2d 733; ***Winnebago County v. S.H.***, 2020 WI App 46, ¶8, 393 Wis. 2d 511, 947 N.W.2d 761.  Dangerousness can be proven through any one of the five standards set forth in WIS. STAT. § 51.20(1)(a)2. ***M.W.***, 402 Wis. 2d 1, ¶¶17-18.  Rachel was found dangerous under § 51.20(1)(a)2.a., which requires showing that a person "[e]vidences a substantial probability of physical harm to himself or herself as manifested by evidence of recent threats of or attempts at suicide or serious bodily harm."

¶8      Further, on extension of a commitment, dangerousness may be established through WIS. STAT. § 51.20(1)(am) in conjunction with one of the five

---

[7] Rachel does not dispute that she is mentally ill and a proper subject for treatment.

standards in § 51.20(1)(a)2. *See M.W.*, 402 Wis. 2d 1, ¶19. Section 51.20(1)(am) states that the requirement of a "recent overt act, attempt, or threat … may be satisfied by showing that there is a substantial likelihood, based on the subject individual's treatment record, that the individual would be a proper subject for commitment if treatment were withdrawn." The goal of § 51.20(1)(am) is

> to avoid the "revolving door" phenomena whereby there must be proof of a recent overt act to extend the commitment but because the patient was still under treatment, no overt acts occurred and the patient was released from treatment only to commit a dangerous act and be recommitted … [in] a vicious circle of treatment, release, overt act, recommitment.

*S.H.*, 393 Wis. 2d 511, ¶9 (alteration in original; citation omitted). However, "[e]ach extension hearing requires proof of *current* dangerousness. It is not enough that the individual was at one point a proper subject for commitment." *Portage County v. J.W.K.*, 2019 WI 54, ¶24, 386 Wis. 2d 672, 927 N.W.2d 509.

¶9 Rachel argues that the County failed to present any evidence of her current dangerousness under WIS. STAT. § 51.20(1)(a)2.a. In doing so, Rachel ignores the evidence presented regarding her dangerousness at the extension hearing.

¶10 Doctor Marcus stated that Rachel had been "hospitalized twice this year," and that she would "deteriorate rapidly" and become a danger to herself if treatment were withdrawn. Specifically, Marcus opined that, based on Rachel's medical history, there was a "high likelihood" that if treatment were withdrawn, Rachel would suffer from a lack of judgment that would result in self-harm, and/or suicidal ideation.

¶11 Kurth testified that although Rachel had been generally doing well throughout her commitment, she had been under "a lot of stressors" and the stress had been causing Rachel to have some suicidal ideations shortly before the extension hearing. Further, Kurth stated that if Rachel's commitment were not extended, she would not be able to arrange her own transportation to her treatment appointments.

¶12 Based upon the above testimony, we conclude that the County proved that Rachel presents a danger to herself under WIS. STAT. § 51.20(1)(a)2.a., through the framework of § 51.20(1)(am). Rachel attempts to discount the foregoing by emphasizing evidence showing that she has been cooperative with treatment during her commitment and her mental health has been improving. However, her circumstance is exactly the type that is envisioned by WIS. STAT. § 51.20(1)(am). And, despite the fact that Rachel has been doing well with her treatment plan, she has nevertheless recently experienced suicidal ideations. Therefore, the clear and convincing evidence shows it is likely that if Rachel's commitment were not extended, she would quickly decompensate, become a danger to herself, and subsequently be subject to another commitment. *See S.H.*, 393 Wis. 2d 511, ¶9.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.